ORAL ARGUMENT NOT YET SCHEDULED

# UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

## No. 25-3115

---

## UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

**v.**

## KEVONTAE STEWART,
*Defendant-Appellant.*

---

## APPEAL FROM THE UNITED STATES
## DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

---

## BRIEF FOR APPELLANT

---

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

MATTHEW L. FARLEY
Asst. Federal Public Defender
625 Indiana Avenue, NW
Suite 550
Washington, DC 20004
(202) 208-7500
Matthew_Farley@fd.org

District Court
Cr. No. 25-MJ-00225 (ZMF)

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), defendant-appellant Kevontae Stewart, hereby states as follows:

## A. Parties and Amici:

This appeal arises from a criminal prosecution of defendant-appellant Kevontae Stewart by plaintiff-appellee, the United States of America. There are no intervenors or amici.

## B. Rulings Under Review:

This is an appeal from the order of the district court (the Honorable James E. Boasberg) directing Magistrate Judge Zia M. Faruqui to accept the indictment returned against Mr. Stewart by a grand jury convened by the District of Columbia Superior Court.

## C. Related Cases:

This case has not previously been before this Court. There are no related cases of which appellant is aware.

# TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS,
AND RELATED CASES ......................................................................... i

TABLE OF CONTENTS .......................................................................... ii

TABLE OF AUTHORITIES ................................................................... iv

JURISDICTIONAL STATEMENT ........................................................ 1

ISSUE PRESENTED FOR REVIEW ..................................................... 1

CONSTITUTIONAL PROVISIONS, STATUTES, AND RULES ............ 1

STATEMENT OF THE CASE ................................................................. 2

    I.    THE FEDERAL GRAND JURY DECLINED TO RETURN
        AN INDICTMENT AGAINST MR. STEWART ..................... 2

    II.    THE MAGISTRATE COURT REFUSED TO ACCEPT
        THE SUPERIOR COURT INDICTMENT ........................... 3

    III.  GOVERNMENT'S APPEAL TO THE DISTRICT COURT .... 7

SUMMARY OF ARGUMENT .................................................................. 9

STANDARD OF REVIEW ..................................................................... 10

ARGUMENT ........................................................................................ 10

    I.    THE FEDERAL RULES OF CRIMINAL PROCEDURE
        GOVERNING FEDERAL INDICTMENTS REQUIRE A
        FEDERAL GRAND JURY TO RETURN A FEDERAL
        INDICTMENT AND DO NOT ALLOW A SUPERIOR
        COURT GRAND JURY TO DO SO. ................................... 10

        A.    Indictments and the Federal Rules of
            Criminal Procedure. ........................................... 11

        B.    The Exclusion of the D.C. Superior Court from the
            Federal Rules is not "Stylistic." ........................ 19

1. The meanings of Federal Rules of Criminal Procedure 1 and 6 are plain ........................................... 20

2. The Advisory Committee Notes to the Federal Rules of Criminal Procedure clarify that a federal court cannot accept an indictment from a Superior Court grand jury. ...................................... 23

C. Changes to the Superior Court Rules of Criminal Procedure Support Mr. Stewart's Reading of the Federal Rules. .............................................. 28

II. THE D.C. CODE DOES NOT DECIDE THE VALIDITY OF A FEDERAL INDICTMENT ........................................... 30

A. Section 11-1916(a) Does Not Grant the Superior Court the Power to Return an Indictment in Federal Court ..................................................... 31

B. The District Court Misread § 11-1916(a). ........................ 39

1. *Hackney* does not control. ............................................ 39

2. The two functions of a grand jury are addressed in different statutory schemes. ........................................ 44

C. The Federal Rules of Criminal Procedure and § 11-1916(a) can be Read Harmoniously, and if not, the Federal Rules Control. .............................................. 46

III. THE DISTRICT COURT'S RULING HAS NO LIMITING PRINCIPLE .................................................... 49

CONCLUSION ................................................................................... 51

CERTIFICATE OF COMPLIANCE ....................................................... 52

ADDENDUM ...................................................................................... 1a

# TABLE OF AUTHORITIES

**CASES**

*Adirondack Med. Ctr. v. Sebelius,*
  740 F.3d 692 (D.C. Cir. 2014) ........................................................46-47

*Ex Parte Bain,*
  121 U.S. 1 (1887)....................................................................... 12

*Caraco Pharm. Labs., Ltd. v. Novo Nordisk A/S,*
  566 U.S. 399 (2012)....................................................................32

*Common Cause v. FEC,*
  108 F.3d 413 (D.C. Cir. 1997) ......................................................... 40

*Communications Sys., Inc. v. FCC,*
  595 F.2d 797 (D.C. Cir. 1978) .........................................................32

*Ctr. For Bio. Diversity v. EPA,*
  722 F.3d 401 (D.C. Cir. 2013) ......................................................... 49

*Fourco Glass Co. v. Transmirra Prods. Corp.,*
  353 U.S. 222 (1957) ....................................................................42

*Gen. Dynamics Land Sys., Inc. v. Cline,*
  540 U.S. 581 (2004)....................................................................32

*Gonzalez v. Thaler,*
  565 U.S. 134 (2012).................................................................... 23

*Hackney v. United States,*
  389 A.2d 1336 (D.C. 1978) ..................................................... 39-40, 43

*Hibbs v. Winn,*
  542 U.S. 88 (2004)......................................................................32

*Huff v. Sec'y of Navy,*
  575 F.2d 907 (D.C. Cir. 1978) ......................................................12-13

*Judge Rotenberg Educ. Ctr., Inc. v. USFDA*,
3 F.4th 390 (D.C. Cir. 2021) ......................................37-38

*Legal Servs. Corp. v. Velazquez*,
531 U.S. 533 (2001)....................................................... 40

*London & Lancashire Indem. Co. of Am. v. Smoot*,
287 F. 952 (D.C. Cir. 1923) .......................................... 49

*Make the Road N.Y. v. Wolf*,
962 F.3d 612 (D.C. Cir. 2020) ...................................... 47

*Midland Asphalt Corp. v. United States*,
489 U.S. 794 (1989)........................................................ 1

*Morton v. Mancari*,
417 U.S. 535 (1974)....................................................... 46

*Mova Pharm. Corp. v. Shalala*,
140 F.3d 1060 (D.C. Cir. 1998) .................................... 49

*Nat'l Ass'n of Home Builders v. Defs. of Wildlife*,
551 U.S. 644 (2007)........................................................ 8

*Nat'l Sall Shipments Traffic Conf., Inc. v. Civil Aeronautics Bd.*,
618 F.2d 819 (D.C. Cir. 1980) ...................................... 49

*Pennington Seed, Inc. v. United States*,
10 F.3d 6 (D.C. Cir. 1993) ............................................ 23

*Penn. Dep't of Public Welfare v. Davenport*,
495 U.S. 552 (1990)....................................................... 21

*Pilon v. U.S. Dep't of Justice*,
73 F.3d 1111 (D.C. Cir. 1996) ..................................20-21

*Stirone v. United States*,
361 U.S. 212 (1960) ...................................................11-12

*Suburban Transit Corp. v. ICC,*
784 F.2d 1129 (D.C. Cir. 1986) ........................................49

*United Shoe Workers of Am. v. Bedell,*
506 F.2d 174 (1974) ........................................32

*United States v. Allen,*
729 F. Supp. 120 (D.D.C. 1989) ........................................7

*United States v. Barnes,*
295 F.3d 1354 (D.C. Cir. 2002) ........................................21

*United States v. Brown,*
2007 WL 2007513 (D.D.C. July 9, 2007) ........................................7

*United States v. Doe Corp.,*
59 F.4th 301 (7th Cir. 2023) ........................................33

*United States v. Hite,*
769 F.3d 1154 (D.C. Cir. 2014) ........................................10

*United States v. Melvin,*
948 F.3d 848 (7th Cir. 2020) ........................................20

*United States v. Ron Pair Enters., Inc.,*
489 U.S. 235 (1989)........................................32

*United States v. Seals,*
130 F.3d 451 (D.C. Cir. 1997) ........................................5-6

*United States v. Thorne,*
548 F. Supp. 3d 70 (D.D.C. 2021) ........................................20

*United States v. Tynen,*
78 U.S. 88 (1870)........................................48

*United States v. Vonn,*
535 U.S. 55 (2002)........................................23

*United States v. Wallace & Tiernan, Inc.*,
  349 F.2d 222 (D.C. Cir. 1965) ......................................................22-23

*United States v. Wilson*,
  290 F.3d 347 (D.C. Cir. 2002) ..............................................................21

*United States v. Young*,
  107 F.3d 903 (D.C. Cir. 1997) ..............................................................10

*Whitman v. Am. Trucking Ass'ns*,
  531 U.S. 457 (2001) ..............................................................................38

**FEDERAL STATUTES, RULES & GUIDELINES**

18 U.S.C. § 922(g)(1) ..........................................................................2-3

18 U.S.C. § 3332 .....................................................................................45

18 U.S.C. § 3333 .......................................................................34, 37, 45

28 U.S.C. § 451 ........................................................................................16

28 U.S.C. §§ 631 ..................................................................................16-17

Fed. R. Crim. P. 1 ........................................ 6, 11, 13, 15-24, 26-27

Fed. R. Crim. P. 2 ..............................................................................24-25

Fed. R. Crim. P. 3 ..............................................................................24-25

Fed. R. Crim. P. 4 ...................................................................................25

Fed. R. Crim. P. 5 ..............................................................................25-26

Fed. R. Crim. P. 5.1 ...........................................................................25-26

Fed. R. Crim. P. 6 ......................................5-6, 14-15, 19-23, 25-26, 45

Fed. R. Crim. P. 7 ................................................................ 13, 21, 25, 47

Fed. R. Crim. P. 8 ...................................................................... 25

Fed. R. Crim. P. 9 ...................................................................... 25

Fed. R. Crim. P. 10 .................................................................... 25

Fed. R. Crim. P. 11 ................................................................. 25-26

Fed. R. Crim. P. 12 ................................................................. 25-26

Fed. R. Crim. P. 12.1 ................................................................. 25

Fed. R. Crim. P. 12.2 ................................................................. 25

Fed. R. Crim. P. 12.3 ................................................................. 25

Fed. R. Crim. P. 13 .................................................................... 25

Fed. R. Crim. P. 14 .................................................................... 25

Fed. R. Crim. P. 15 .................................................................... 25

Fed. R. Crim. P. 16 .................................................................... 25

Fed. R. Crim. P. 17 .................................................................... 25

Fed. R. Crim. P. 17.1 ................................................................. 25

Fed. R. Crim. P. 18 .................................................................... 25

Fed. R. Crim. P. 20 .................................................................... 25

Fed. R. Crim. P. 21 .................................................................... 25

Fed. R. Crim. P. 23 ..................................................................................25

Fed. R. Crim. P. 24 ..................................................................................25

Fed. R. Crim. P. 25 ..................................................................................25

Fed. R. Crim. P. 26 ..................................................................................25

Fed. R. Crim. P. 26.1 ...............................................................................25

Fed. R. Crim. P. 26.2 ...............................................................................25

Fed. R. Crim. P. 26.3 ...............................................................................25

Fed. R. Crim. P. 27 ..................................................................................25

Fed. R. Crim. P. 28 ..................................................................................25

Fed. R. Crim. P. 29 ..................................................................................25

Fed. R. Crim. P. 29.1 ...............................................................................25

Fed. R. Crim. P. 30 ..................................................................................25

Fed. R. Crim. P. 31 ..................................................................................25

Fed. R. Crim. P. 32 ..................................................................................25

Fed. R. Crim. P. 32.1 ...............................................................................25

Fed. R. Crim. P. 32.2 ...............................................................................25

Fed. R. Crim. P. 33 ..................................................................................25

Fed. R. Crim. P. 34 ..................................................................................25

Fed. R. Crim. P. 35 ...................................................................25

Fed. R. Crim. P. 36 ...................................................................25

Fed. R. Crim. P. 38 ...................................................................25

Fed. R. Crim. P. 40 ...................................................................25

Fed. R. Crim. P. 41 ...................................................................25

Fed. R. Crim. P. 42 ...................................................................25

Fed. R. Crim. P. 43 ...................................................................25

Fed. R. Crim. P. 44 ...................................................................25

Fed. R. Crim. P. 45 ...................................................................25

Fed. R. Crim. P. 46 ...................................................................25

Fed. R. Crim. P. 47 ...................................................................25

Fed. R. Crim. P. 48 ...................................................................25

Fed. R. Crim. P. 49 ...................................................................25

Fed. R. Crim. P. 50 ...................................................................25

Fed. R. Crim. P. 51 ...................................................................25

Fed. R. Crim. P. 52 ...................................................................25

Fed. R. Crim. P. 53 ...................................................................25

Fed. R. Crim. P. 55 ...................................................................25

Fed. R. Crim. P. 56 ......................................................... 25

Fed. R. Crim. P. 57 ......................................................... 25

Fed. R. Crim. P. 58 ......................................................... 25

Pub. L. No. 91-358,
    84 Stat. 515 (July 29, 1970) ........................................ 40-41

Pub. L. No. 99-650,
    100 Stat. 3635 (Nov. 14, 1986) ....................................... 41

U.S. Const. amend. V ............................................ 11-13, 21, 48

**STATE STATUTES**

Ala. Code § 12-16-191 ...................................................... 35

Ala. Code § 12-16-192 ...................................................... 35

Ala. Code § 12-16-193 ...................................................... 35

Ala. Code § 12-16-194 ...................................................... 35

Alaska Stat. § 12.40.030 ................................................. 35-36

Ark. Rev. Stat. § 16-85-503(a) ............................................. 35

Ark. Rev. Stat. § 16-85-503(d) ............................................. 35

D.C. Code § 1-204.31(c) .................................................... 16

D.C. Code §§ 11-721-723 .................................................... 38

D.C. Code §§ 11-921-925 .................................................... 38

D.C. Code § 11-1101 ..............................................................38

D.C. Code § 11-1201 ..............................................................38

D.C. Code § 11-1321 ..............................................................38

D.C. Code § 11-1732(a) .........................................................17

D.C. Code § 11-1901 ..............................................................41

D.C. Code § 11-1902(4) .........................................................18

D.C. Code § 11-1903 .........................................................40-44

D.C. Code § 11-1906 ..............................................................41

D.C. Code § 11-1916(a) ...........................5, 7, 10, 30-34, 36-50

D.C. Code § 11-1917 .........................................................42-43

Ga. Code Ann. § 15-12-71 .....................................................35

Minn. Stat. § 628.61(2)...........................................................35

Minn. Stat. § 628.61(3)...........................................................35

Mo. Rev. Stat. § 540.031.........................................................35

N.C. Gen. Stat. 15A-628(a)(5) ...............................................35

Neb. Rev. State. § 29-1401 .....................................................35

Nev. Rev. Stat. § 172.185 .......................................................35

N.M Stat. Ann. § 31-6-7 .........................................................35

N.Y. Crim. Proc. Law § 190.55 ...................................................35

Ohio Rev. Code Ann. § 2939.21 ...............................................35

Okla. Stat. tit. 22, § 338 ...........................................................35

Or. Rev. Stat. § 132.440 ...........................................................35

S.D. Codified Laws § 23A-5-9 ..................................................35

Tenn. R. Crim. P. 6(e)(3) ..........................................................35

Tenn. R. Crim. P. 6(e)(5) ..........................................................35

Utah Code Ann. § 77-10a-17 .....................................................35

**D.C. RULES**

Super. Ct. R. Crim. P. 1(a) .......................................................28

Super. Ct. R. Crim. P. 6.....................................................28-30, 44-45

**OTHER AUTHORITIES**

Antonin Scalia & Bryan A. Garner,
  Reading Law: The Interpretation of Legal Texts (2012) ....................47

*Cognizance*, Webster's New Int'l Dictionary
  (2d ed. 1961)............................................................................33

Department of Justice Manual CRM 1-499, § 159 ...............................37

Jury Plan for the Superior Court of the District of Columbia
  (May 28, 2020) ...............................................................................44

Jury Selection Plan for the Random Selection of Grand and Petit
    Jurors, United States District Court for the District of Columbia
    (as amended May 17, 2022) ............................................................. 44

*Serving on a Maryland Grand Jury*,
    Maryland Judiciary (Apr. 2019) ....................................................... 34

U.S. Dep't of the Interior, Definitions of Insular Area
    Political Organizations ..................................................................... 18

## JURISDICTIONAL STATEMENT

The district court had jurisdiction pursuant to 18 U.S.C. § 3231. The court's order that the magistrate judge accept the Superior Court indictment was entered on November 20, 2025. This was a final appealable order because it was entered over Mr. Stewart's objection that the grand jury was not properly constituted. *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 802 (1989) ("a defect so fundamental that it causes the grand jury no longer to be a grand jury … gives rise to the constitutional right not to be tried"). A timely notice of appeal having been filed on November 26, 2025, this Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## ISSUE PRESENTED FOR REVIEW

Whether the government may initiate a criminal case in federal district court with an indictment returned by a grand jury convened by the District of Columbia Superior Court.

## CONSTITUTIONAL PROVISIONS, STATUTES, AND RULES

Pursuant to Federal Rule of Appellate Procedure 28(f) and Circuit Rule 28(a)(5), pertinent constitutional provisions, statutes, and rules are set forth in the Addendum to this brief.

## STATEMENT OF THE CASE

### I.   THE FEDERAL GRAND JURY DECLINED TO RETURN AN INDICTMENT AGAINST MR. STEWART

On September 18, 2025, the government filed a criminal complaint charging Mr. Kevontae Stewart with unlawfully possessing a firearm. A010.  The magistrate court issued an arrest warrant for Mr. Stewart based on that complaint and Mr. Stewart was arrested the same day. A016.  A detention hearing was scheduled for the next day.

Mr. Stewart appeared before the magistrate court for his detention hearing on September 19, 2025, and was ordered detained.  A020.

One week later, on September 26, 2025, the government proceeded to a grand jury seeking an indictment charging Mr. Stewart with unlawfully possessing a firearm in violation of 18 U.S.C. § 922(g)(1).  This grand jury had been convened by the United States District Court for the District of Columbia.  A017.  The records of this proceeding have not been disclosed to Mr. Stewart.  Ultimately, however, "12 or more grand jurors did not concur in finding an indictment in [Mr. Stewart's] case."  A017. The grand jury's no true bill was filed with the clerk of court.

As a result of the no true bill, the magistrate court ordered Mr. Stewart released pending further proceedings. A218.

The government subsequently presented its case against Mr. Stewart to a second grand jury. This grand jury, however, was not summoned by the U.S. District Court but had been summoned by the Superior Court of the District of Columbia. A231-32. But the Superior Court grand jury was not presented with a violation of the D.C. Code. Instead, the government asked the Superior Court grand jury to indict Mr. Stewart on the federal offense of unlawfully possessing a firearm in violation of 18 U.S.C. § 922(g)(1). The Superior Court grand jury voted to return a single-count indictment for that offense.

## II. THE MAGISTRATE COURT REFUSED TO ACCEPT THE SUPERIOR COURT INDICTMENT

Upon return of the indictment, the magistrate court questioned whether the government could seek an indictment from the Superior Court grand jury for a federal charge after the federal grand jury had declined to indict. The magistrate court declined to accept the Superior

Court indictment that afternoon and instead ordered the parties to brief whether he was permitted to accept such an indictment. A024.[1]

The government responded to the magistrate court's order by filing an emergency motion to the Chief Judge of the District Court. A027. The government demanded that the Chief Judge issue an order requiring the magistrate court to accept the Superior Court indictment. The government also requested that the Chief Judge admonish the magistrate court and order him to give government-favorable instructions to the Superior Court grand jury foreperson. A028.

After a hearing on the government's emergency motion, the Chief Judge concluded that the magistrate court had proceeded appropriately by asking the parties for briefing to aid in its decision-making. A246-47, A254. The Chief Judge, therefore, denied the government's emergency request and ordered the parties to proceed on the magistrate court's requested briefing schedule. The parties did so. The government filed its position largely adopting its argument from its emergency filing

---

[1] In that order, the magistrate court appointed the Office of the Federal Public Defender as co-counsel for the limited purpose of representing Mr. Stewart on this issue. A026.

before the Chief Judge.  A085.  Mr. Stewart responded.  A086.  And the government replied.  A099.

The government, at bottom, made two arguments to support its position.  First, the government argued that a Superior Court grand jury can return an indictment on a federal crime in federal court because § 11-1916(a) of the D.C. Code provides that a "grand jury serving in the District of Columbia may take cognizance of all matters brought before it regardless of whether an indictment is returnable in the Federal or District of Columbia courts."  A100.  Second, the government argued that this Court had already held in *United States v. Seals*, 130 F.3d 451 (D.C. Cir. 1997), that Superior Court grand juries are empowered to return indictments on federal crimes in federal court.  A103-04,

The magistrate court concluded in a written opinion that it was not permitted to accept an indictment that had been returned by a Superior Court grand jury.  A108.  The magistrate court reasoned that the Federal Rules of Criminal Procedure require that all federal criminal cases begin with an indictment returned by federal grand jury.  The Federal Rules of Criminal Procedure require that a grand jury be summoned by a "court,"

5

A113 (citing Fed. R. Crim. P. 6), and under Rule 1, the D.C. Superior Court is not a "court" because "court" is defined as a "federal judge," and a judge of the Superior Court is not a "federal judge." A113 (citing Fed. R. Crim. P. 1(2)). Under the Rules, a "federal judge" does not include a judge of the Superior Court of the District of Columbia. A114-15 (citing Fed. R. Crim. P. 1).

The magistrate court further concluded that the Federal Rules of Criminal Procedure take precedence over the D.C. Code and forbade him from accepting an indictment returned by a Superior Court grand jury. A115-17. Moreover, the magistrate court found that the government's reliance on *Seals* was misplaced because *Seals* did not answer the question of whether the Federal Rules of Criminal Procedure permitted initiating a federal criminal case through the Superior Court grand jury. Regardless, *Seals* was decided before the Federal Rules were amended to explicitly exclude the D.C. Superior Court from its definition of "court." A118.

## III. THE GOVERNMENT'S APPEAL TO THE DISTRICT COURT

The government appealed the magistrate court's decision to the Chief Judge of the District Court. A120. Mr. Stewart responded, A137, and the government replied, A169.

The government argued that the magistrate court's decision required finding that the Federal Rules of Criminal Procedure had "repeal[ed] by implication" § 11-1916(a) of the D.C. Code, A125-26, and that a general statute, like the Rules of Criminal Procedure, should not control a more specific statute, like § 11-1916(a), A126-27.

The district court found that the indictment was valid. A180, A181. First, the district court concluded that § 11-1916(a) affirmatively empowers a Superior Court grand jury to return an indictment for a federal crime to a federal court. A187. In doing so, the district court relied on *dicta* from this Court's decision in *Seals* and two district court opinions that assumed the meaning of § 11-1916(a) without directly addressing the question. A188-89 (citing *United States v. Allen*, 729 F. Supp. 120, 122 (D.D.C. 1989); *United States v. Brown*, 2007 WL 2007513, at *4 (D.D.C. July 9, 2007)). The district court also relied on a 1978

7

decision from the D.C. Court of Appeals which concluded that a Superior Court judge could accept an indictment returned by a federal grand jury (*i.e.*, the reverse of the situation here). A189.

The district court rejected Mr. Stewart's arguments that the 2002 Amendments to the Federal Rules of Criminal Procedure, which affirmatively excluded the D.C. Superior Court from its definition of "court," excised any power of the Superior Court grand jury to return a federal indictment in federal court. A191-95. The district court declined to "infer" that Congress abridged the authority of the Superior Court grand jury through the 2002 Amendments absent "evidence of a 'clear and manifest' legislative intention to do so." A194 (quoting *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 663 (2007)).

The district court recognized that its decision "would permit the Government to bring *any* criminal matter before a local grand jury for indictment, including a capital case, treason, RICO, sedition, and other crimes thought to be reserved for the federal courts." A194-95 (quotation marks omitted) (emphasis in original). Indeed, the district court held

8

that the government was free to "circumvent the federal grand jury altogether" when it so chose, without any consequence.  A195.

Mr. Stewart noted an appeal of the district court's decision.  A202. Recognizing that the question presented "is a close and challenging one," the district court stayed its order pending resolution of this novel issue on appeal.  A216.

## SUMMARY OF ARGUMENT

The Federal Rules of Criminal Procedure govern all criminal cases in all federal district courts.  This includes the United States District Court for the District of Columbia.  *Infra* pt. I.  And the Federal Rules do not permit a district court to accept an indictment returned by a grand jury summoned by the D.C. Superior Court.  *Infra* pt. I.A.  Indeed, the Federal Rules were explicitly amended in 2002 to note that the D.C. Superior Court does not have the power to summon a grand jury which can return an indictment in federal court.  *Infra* pt. I.B.  And the D.C. Superior Court recognized the effect of the 2002 amendments to the Federal Rules of Criminal Procedure in the 2016 amendments to the Superior Court Rules of Criminal Procedure.  *Infra* pt. I.C.

9

D.C. Code § 11-1916(a), which empowers a Superior Court grand jury to "take cognizance of all matters brought before it regardless of whether a indictment is returnable in the Federal or District of Columbia courts," does not change this analysis. *Infra* pt. II. This statute merely empowers the Superior Court grand jury to investigate non-criminal matters. *Infra* pt. II.A. The district court's contrary interpretation is incorrect. *Infra* pt. II.B.

At bottom, the district court's opinion empowers a D.C. Superior Court grand jury to return an indictment to *any federal court in the country*. This is an absurd result requiring reversal. *Infra* pt. III.

## STANDARD OF REVIEW

This Court reviews legal questions, including those involving statutory interpretation and application of the Federal Rules of Criminal Procedure, de novo. *United States v. Hite*, 769 F.3d 1154, 1160 (D.C. Cir. 2014); *United States v. Young*, 107 F.3d 903, 910 (D.C. Cir. 1997).

## ARGUMENT

I. **THE FEDERAL RULES OF CRIMINAL PROCEDURE GOVERNING FEDERAL INDICTMENTS REQUIRE A FEDERAL GRAND JURY TO RETURN A FEDERAL**

**INDICTMENT AND DO NOT ALLOW A SUPERIOR COURT GRAND JURY TO DO SO**

The Federal Rules of Criminal Procedure "govern the procedure in all criminal proceedings in the United States district courts, the United States courts of appeals, and the Supreme Court of the United States." Fed. R. Crim. P. 1(a)(1). And the Rules plainly require that every criminal case initiated in the federal district courts stem from the filing of an indictment returned by a federal grand jury. There are no exceptions to this rule that would allow a local or state court to return a federal indictment, and the district court's contrary decision should be reversed.

### A. Indictments and the Federal Rules of Criminal Procedure

The United States Constitution demands that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger[.]" U.S. Const. amend. V The Supreme Court has interpreted this amendment to require that when the "crime charged …

11

is a felony, … the Fifth Amendment requires that prosecution be begun by indictment." *Stirone v. United States*, 361 U.S. 212, 215 (1960).

The grand jury "was adopted in this country, and is continued from considerations similar to those which give to it its chief value in England, and is designed as a means, not only of bringing to trial persons accused of public offenses upon just grounds, but also a means of protecting the citizen against unfounded accusation, whether it comes from government, or be prompted by partisan passion or private enmity." *Ex parte Bain*, 121 U.S. 1, 11 (1887). "No person shall be required, according to the fundamental law of the country, except in the cases mentioned, to answer for any of the higher crimes unless this body, consisting of not less than sixteen nor more than twenty-three good and lawful men, selected from the body of the district, shall declare, upon careful deliberation, under the solemnity of an oath, that there is good reason for his accusation and trial." *Id.* As always, Congress can enact protections above this constitutional floor. *Huff v. Sec'y of Navy*, 575 F.2d 907, 915-16 (D.C. Cir. 1978), *vacated on other grounds*, 444 U.S. 453 (1980) ("Congress may, of course, elect to provide rights and privileges

12

extending beyond those minimally guaranteed by the Constitution.").
And Congress chose to do so here in the Federal Rules of Criminal
Procedure.

The Federal Rules of Criminal Procedure "govern the procedure in *all criminal proceedings in the United States district courts*, the United States courts of appeals, and the Supreme Court of the United States." Fed. R. Crim. P. 1(a)(1) (emphasis added). Rule 7, which provides that all felony convictions proceed by indictment, is a direct codification of the Fifth Amendment. Fed. R. Crim. P. 7(a)(1) ("An offense (other than criminal contempt) must be prosecuted by an indictment if it is punishable: (A) by death; or (B) by imprisonment for more than one year."). Under the Rules, an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged and must be signed by an attorney for the government." Fed. R. Crim. P. 7(c)(1). "For each count, the indictment … must give the official or customary citation of the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated." *Id.*

Rule 6, in turn, governs the constitution and operation of the grand jury which returns an indictment. "When the public interest so requires, the court must order that one or more grand juries be summoned." Fed. R. Crim. P. 6(a)(1). "The court," then "will appoint one juror as the foreperson and another as the deputy foreperson." *Id.* 6(c). Proceedings before the grand jury are generally confidential, but "[t]he court may authorize disclosure—at a time, in a manner, and subject to any other conditions that it directs—of a grand-jury matter" for various reasons. *Id.* 6(e)(3)(E).

"A grand jury may indict only if at least 12 jurors concur. The grand jury—or its foreperson or deputy foreperson—must return the indictment to a magistrate judge in open court." Fed. R. Crim. P. 6(f). "If a complaint or information is pending against the defendant and 12 jurors do not concur in the indictment, the foreperson must properly and in writing report the lack of concurrence to the magistrate judge." *Id.*

"A grand jury must serve until the court discharges it, but it may serve more than 18 months only if the court, having determined that an extension is in the public interest, extends the grand jury's service." Fed.

R. Crim. P. 6(g). "An extension may be granted for no more than 6 months, except as otherwise provided by statute." *Id.* Individual grand jurors may be excused by "the court" either temporarily or permanently. *Id.* 6(h). If a grand juror is excused permanently, "the court may impanel an alternate juror in place of the excused juror." *Id.*

It is clear from Rule 6, then, that "the court" is integral to the grand jury's functioning. "The court" summons the grand jury. "The court" appoints a foreperson and deputy foreperson. "The court" decides when to disclose grand jury matters to the public. "The court" may excuse grand jurors. And "the court" can replace excused grand jurors. The Federal Rules, however, define "the court" to exclude the local District of Columbia courts and their judges. A Superior Court grand jury, therefore, cannot return an indictment in compliance with Rule 6.

The D.C. Superior Court is not a "court" under the Federal Rules of Criminal Procedure. The Federal Rules' definition of "court" is plain. Rule 1 defines "Court" as "a federal judge performing functions authorized by law." Fed. R. Crim. P. 1(b)(2). The Rule then defines "Federal judge," to mean "a justice or judge of the United States as these

terms are defined 28 U.S.C. § 451"; "a magistrate judge"; and "a judge confirmed by the United States Senate and empowered by statute in any commonwealth, territory, or possession to perform a function to which a particular rule relates." Fed. R. Crim. P. 1(b)(3).

Judges of the Superior Court are not included within any of these definitions of "federal judge." First, judges of the D.C. Superior Court are not covered by 28 U.S.C. § 451. A "judge or justice" referred to in 28 U.S.C. § 451 includes the Chief Justice or an Associate Justice of the Supreme Court and any judge of a court created by an act of Congress who is "entitled to hold office during good behavior." 28 U.S.C. § 451. Judges of the Superior Court, however, are not entitled to hold office during good behavior. Rather, they are appointed for fifteen-year terms. D.C. Code § 1-204.31(c).

Second, judges of the Superior Court—even magistrate judges of the Superior Court—are not "magistrate judges" under the Federal Rules. Rule 1 defines a "magistrate judge" to be "a United States magistrate judge as defined in 28 U.S.C. §§ 631-39." And these provisions define a magistrate judge as one appointed by "the judges of

16

each United States district." 28 U.S.C. § 631. D.C. Superior Court judges are not appointed by U.S. District Court judges, but rather by the President. And Superior Court magistrate judges are appointed by the Chief Judge of the Superior Court. D.C. Code § 11-1732(a).

Third, judges of the Superior Court are not judges of a United States commonwealth, territory, or possession, because the District of Columbia is neither a commonwealth, a territory, nor a possession. Indeed, the Rules discuss the District of Columbia as being distinct from commonwealths, territories, and possessions. In the definition of "state," Rule 1 notes that "'State' includes the District of Columbia, *and* any commonwealth, territory, or possession of the United States." Fed. R. Crim. P. 1(b)(9) (emphasis added). If the District of Columbia were considered a commonwealth, territory, or possession, there would be no need to list it separately in Rule 1's definition of "state."

Moreover, the plain meanings of "commonwealth," "possession," and "territory" do not include the District of Columbia. The Rules of Criminal Procedure do not define these terms, but the U.S. Department of the Interior provides necessary context. A "commonwealth" is an

17

"organized United States insular area, which has established with the Federal Government, a more highly developed relationship, usually embodied in a written mutual agreement." U.S. Dep't of the Interior, Definitions of Insular Area Political Organizations, https://www.doi.gov/oia/islands/politicatypes. [2] The Department has defined "territory" and "possession" identically as an "incorporated United States insular area, of which only one exists currently, Palmyra Atoll." *Id.* The term "possession" "still appears in Federal statutes and regulations" but "is no longer current colloquial usage." *Id.*

The definition of "the Court" under the D.C. Code confirms that the Superior Court and its judges do not fall under the definition in Rule 1 of the Federal Rules of Criminal Procedure. Under the D.C. Code, "the Court" refers to "the Superior Court of the District of Columbia and may include any judge of the Court acting in an official capacity." D.C. Code § 11-1902(4).

---

[2] According to Interior, there are currently two commonwealths in the United States: The Northern Mariana Islands and Puerto Rico.

18

The judges of the Superior Court, therefore, do not fall under any of the definitions of "federal judge" in Rule 1. Indeed, if there were any lingering doubts that Superior Court judges are not "federal judges" under the Rules, that doubt is eliminated by the committee notes to Rule 1. There, the commentary to the 2002 Amendment to Rule 1 specifically states that the "term [federal judge] does not include local judges in the District of Columbia." Fed. R. Crim. P. 1 Committee Notes on Rules-2002 Amendment.

The Superior Court indictment returned against Mr. Stewart is facially invalid. It is undisputed that the indictment was returned by a Superior Court grand jury. A Superior Court grand jury is not convened by "the court," *i.e.*, a "federal judge," as required by Rules 1 and 6. This Court's analysis should end here.

### B. The Exclusion of the D.C. Superior Court from the Federal Rules is not "Stylistic."

The district court agreed that Mr. Stewart's reading of the Federal Rules of Criminal Procedure "makes sense," A191, but it rejected that plain text interpretation by finding that the exclusion of the Superior

Court from the definition of "court," was merely "stylistic."  A192.  The district court was wrong.

The district court relied on the commentary to the Rules "emphasiz[ing] several times over that the 2002 amendments were a 'general restyling' without changes in 'substance' or 'practice' except 'as noted' specifically."  A192 (citing Fed. R. Crim. P. 6, Committee Notes on Rules–2002 Amendment).  But the district court had no justification for relying on the amendment commentary when the language of the Rules is plain.  And even if the district court did have cause to look to the notes, it ignored that the 2002 amendment, which excluded the Superior Court from the definition of "court," was not noted to be a "stylistic" change to the Rules.

### 1. The meanings of Federal Rules of Criminal Procedure 1 and 6 are plain.

The "principles of statutory interpretation apply [...] to the federal rules, including the Federal Rules of Criminal Procedure."  *United States v. Melvin*, 948 F.3d 848, 852 (7th Cir. 2020); *accord United States v. Thorne*, 548 F. Supp. 3d 70, 117 (D.D.C. 2021).  And it is a "fundamental canon of statutory interpretation" to "begin[] with the language of the

statute itself." *Pilon v. U.S. Dep't of Justice*, 73 F.3d 1111, 1119 (D.C. Cir. 1996) (quoting *Penn. Dep't of Public Welfare v. Davenport*, 495 U.S. 552, 557-58 (1990)). So, in "construing a statute, we look first for the plain meaning of the text." *United States v. Barnes*, 295 F.3d 1354, 1359 (D.C. Cir. 2002)). "Whether statutory language is plain depends on 'the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.'" *Id.* (quoting *United States v. Wilson*, 290 F.3d 347, 352 (D.C. Cir. 2002)). "If the statute has a 'plain and unambiguous meaning,' our inquiry ends so long as the resulting 'statutory scheme is coherent and consistent.'" *Id.*

Here, the plain language of Rules 1 and 6 is clear: a federal felony criminal case can be initiated only by an indictment returned by a grand jury convened by a federal court. The "language itself, the specific context in which the language is used, and the broader context of the [Rules] as a whole" all point in this same direction. *Barnes*, 295 F.3d at 1359.

***The Plain Language.*** The plain text of Rules 1 and 6 is clear. The Fifth Amendment and Rule 7 require that a felony be prosecuted by

an indictment returned by a grand jury. Rule 6 requires that a grand jury be summoned by "the court" and Rule 1 clarifies that "the court" is a "federal judge" and that a "federal judge" does not include a judge of the Superior Court. *Supra* pt. I.A.

***The Language in Context.*** The substantive context of Rules 1 and 6 reinforces the plain text interpretation Mr. Stewart articulates. The two rules speak to the function of federal indictments, federal charges, federal grand juries, and the function of federal judges in federal court. A reading of Rules 1 and 6 that confines the ability to summon a grand jury to indict on federal charges to a federal judge from a federal court fully aligns with the rest of Rules 1 and 6.

***The Rules as a Whole.*** The Federal Rules of Criminal Procedure "govern the procedure in all criminal proceedings in the United States district courts"; there is no exception carving out the district court in the District of Columbia. Fed. R. Crim. P. 1(a)(1). Indeed, "one of the central purposes of the Rules was to make uniform the practices of *all* the district courts." *United States v. Wallace & Tiernan, Inc.*, 349 F.2d 222, 226 (D.C.

Cir. 1965) (emphasis added). Thus, "[t]here can be no doubt that Rule 6 was intended to govern the procedures in the District of Columbia." *Id.*

Because the text of Rules 1 and 6 is plain and unambiguous, there is no need to engage other tools of statutory interpretation, such as legislative history and committee notes, to discover their meanings. The Court's analysis therefore should end here.

> **2. The Advisory Committee Notes to the Federal Rules of Criminal Procedure clarify that a federal court cannot accept an indictment from a Superior Court grand jury.**

The Advisory Committee Notes to the Federal Rules of Criminal Procedure "are a species of legislative history." *Gonzalez v. Thaler*, 565 U.S. 134, 164 (2012) (Scalia, J., dissenting). And although a court "need not consider legislative history when a statute's plain language is unequivocal," *Pennington Seed, Inc. v. United States*, 10 F.3d 6, 11 (D.C. Cir. 1993), to the extent Rules 1 and 6 are not clear, "the Advisory Committee Notes provide a reliable source of insight into the meaning of a rule ...." *United States v. Vonn*, 535 U.S. 55, 64 n.6 (2002). Here, the Advisory Committee Notes for the 2002 Amendments to Rules 1 and 6

unambiguously establish that a Federal Court cannot accept an indictment returned by a Superior Court grand jury.

The commentary to the 2002 Amendments to Rule 1 explicitly notes that the term "Federal judge … does not include local judges in the District of Columbia." Fed. R. Crim. P. 1, Committee Notes on Rules— 2002 Amendment. Because a Superior Court judge does not qualify as a "judge" under the Federal Rules, he or she is not a "court" as required to return a federal indictment.

The district court concluded that the 2002 Amendments to Rule 1 excluding the D.C. Superior Court from the definition of "court" were "stylistic" and therefore did not change the assumed practice of allowing a Superior Court grand jury to return a federal indictment. A192. The district court was incorrect.

The introduction to the 2002 commentary of every single rule *except for Rule 1*, begins with the same caveat: "The language of Rule [insert Rule # here] has been amended as part of the general *restyling* of the Criminal Rules to make them more easily understood and to make style and terminology consistent throughout the rules." Fed. R. Crim. P. 2, 3,

4, 5, 5.1, 6, 7, 8, 9, 10, 11, 12, 12.1, 12.2, 12.3, 13, 14, 15, 16, 17, 17.1, 18, 20, 21, 23, 24, 25, 26, 26.1, 26.2, 26.3, 27, 28, 29, 29.1, 30, 31, 32, 32.1, 32.2, 33, 34, 35, 36, 38, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 55, 56, 57, 58 (emphasis added). This sentence is then followed by one of two different clarifications. The 2002 commentary to some of the amended Rules indicates that the 2002 amendments are "stylistic" and often that "[n]o substantive change is intended," *see*, *e.g.*, Fed. R. Crim. P. 2 Committee Notes on Rules—2002 Amendment; *see also, e.g.*, Fed. R. Crim. P. 36 Committee Notes on Rules—2002 Amendment ("These changes are intended to be stylistic only"). In the alternative, for other amended Rules, the commentary indicates that "no substantive change is intended, *except as described below*[,]" and then describes *non-stylistic*, *substantive* changes. *See, e.g.*, Fed. R. Crim. P. 3 Committee Notes on Rules—2002 Amendment (emphasis added); *see also, e.g.*, Fed. R. Crim. P. 15, Committee notes on Rules—2002 Amendment ("These changes are intended to be stylistic only, except as noted below.").

Even when specific changes are noted to be substantive, the commentary to the 2002 amendments tends to specify when changes are

intended to limited effect.  For example, the committee will note that "[n]o change in practice is intended" for a specific change, or that "language is intended to reflect and reaffirm current practice."  Fed. R. Crim. P. 5 Committee Notes on Rules—2002 Amendment; *see also* Fed. R. Crim. P. 6 Committee Notes on Rules—2002 Amendment ("No change in substance was intended.").  Or the commentary will indicate that the "Committee did not intend to make any substantive changes in practice" by making particular changes.  Fed. R. Crim. P. 5.1 Committee Notes on Rules—2002 Amendment.  The Committee even noted when the failure to amend "was in no way intended either to approve or disapprove the existing law interpreting that provision."  Fed. R. Crim. P. 11 Advisory Committee Notes on Rules—2002 Amendment; *see also* Fed. R. Cim. P. 12 Committee Notes on Rules—2002 Amendment ("the Committee intends to make no change in the current law…").

Rule 1, however, is completely different.  Rule 1 is the only rule of the 64 rules amended in 2002 whose commentary does not begin with the caveat that the rule "has been amended as part of the general restyling of the Criminal Rules" or that "[t]hese changes are intended to be stylistic

only, except as noted below." Instead, the commentary for the 2002 amendment to Rule 1 reflects its complete revision.

The 2002 commentary to Rule 1 states that "Rule 1 is *completely revised.*" Fed. R. Crim. P. 1 Committee Notes on Rules—2002 Amendment (emphasis added). The commentary goes on to list several specific changes to Rule 1, including one of the changes at issue here:

> the term 'judge of the United States' has been replaced with the term 'Federal Judge.' That term includes Article III judges and magistrate judges, and as noted in Rule 1(b)(3)(C), federal judges other than Article III judges who may be authorized by statute to perform a particular act specified in the Rules of Criminal Procedure. *The term does not include local judges in the District of Columbia.*

*Id.* (emphasis added). And there is no language within the listed changes which indicates that the listed changes were to make no change to current practice.

The commentary to the 2002 Amendment to Rule 1 concludes by noting that all changes *except* the listed changes were made "as a part of the general restyling of the rules to make them more easily understood." *Id.* Thus, the commentary makes clear that the listed changes are substantive, intended to amend current practice, whereas any change not listed was "intended to be stylistic only." *Id.*

## C. Changes to the Superior Court Rules of Criminal Procedure Support Mr. Stewart's Reading of the Federal Rules.

The Superior Court Rules of Criminal Procedure "govern the procedure in all criminal proceedings in the Superior Court of the District of Columbia." Super. Ct. R. Crim. P. 1(a). And changes made to the Superior Court Rules of Criminal Procedure between 2015 and 2016 support Mr. Stewart's conclusion that a Superior Court grand jury may not return an indictment in federal court.

The Superior Court Rules long assumed that "a grand jury summoned by the Superior Court may return indictments in either the Superior Court or the United States District Court." Super. Ct. R. Crim. P. 6, Comment (2015); *see also* Super. Ct. R. Crim. P. 6, Advisory Committee Comment (1971). Accordingly, the 2015 Commentary noted that paragraphs (c), (d), (e), and (f) of Superior Court Rule of Criminal Procedure 6 were modified from their federal counterparts to account for the presumed ability of a Superior Court grand jury to return an indictment in two different courts. In particular, the earlier versions of the Superior Court rules noted that the record of a grand jury vote must

28

be filed "with the Clerk of the Court in which the indictment is returned." Super. Ct. R. Crim. P. 6(c) (2015). Moreover, the Superior Court rules repeatedly referred to the relevant grand jury as "a grand jury ordered by the Superior Court," recognizing that it was necessary to specify to which grand jury the rules were referring. *Id.* 6(e). And finally, in the rule authorizing the Superior Court grand jury to return an indictment, the rules specified that an indictment must be returned "to a judge of the court in which the offense is to be tried." *Id.* 6(f). If the grand jury declined to return a true bill of indictment, the rules indicated that the foreperson must so report "to the court which has jurisdiction to try the defendant in writing as soon as possible." *Id.*

In 2016, however, the Board of Judges responsible for amending the Superior Court rules removed all references to returning an indictment in federal court from the Superior Court Rules of Criminal Procedure because of the 2002 Amendments to the Federal Rules of Criminal Procedure. The Superior Court Rules, specifically Rule 6, were "redrafted to conform to the general restyling of the federal rules in 2002." Super. Ct. R. Crim. P. 6, Comment (2016).

As a result, the previous comment language to Rule 6, which accounted for the presumed ability of a Superior Court grand jury to return an indictment in federal court, was removed from the Rule 6 commentary. Similarly, all the language in the Rule itself which accounted for the possibility of the Superior Court grand jury to return an indictment in a federal court was removed. *Compare* Super. Ct. R. Crim. P. 6 (c), (d), (e), (f) (2015) *with* Super. Ct. R. Crim. P. 6 (c), (d), (e), (f) (2016). In so doing, the Board of Judges of the Superior Court recognized in 2016 that a Superior Court grand jury does not have authority to return an indictment in federal court.

The district court's contrary conclusion must be reversed.

## II. THE D.C. CODE DOES NOT DECIDE THE VALIDITY OF A FEDERAL INDICTMENT

The district court concluded that § 11-1916(a) of the D.C. Code "prevails" over the Federal Rules of Criminal Procedure and requires a federal judge to accept a federal indictment charging federal crimes returned by a Superior Court grand jury. A181. The district court's reading misunderstands that § 11-1916(a) concerns only a grand jury's power to investigate, not its power to indict. And even if § 11-1916(a)

30

does concern the Superior Court grand jury's power to indict, that provision must be read in harmony with the Federal Rules of Criminal Procedure which do not allow a Superior Court grand jury to return a federal indictment. To the extent § 11-1916(a) and the Federal Rules do irreconcilably conflict, the later-in-time statute—the Federal Rules—controls, and the courts must comply with the Federal Rules of Criminal Procedure.

## A. Section 11-1916(a) Does Not Grant the Superior Court the Power to Return an Indictment in Federal Court

The full text of D.C. Code § 11-1916(a) provides that a "grand jury serving in the District of Columbia may take cognizance of all matters brought before it regardless of whether an indictment is returnable in the Federal or District of Columbia courts." The district court concluded that the local statute's language empowering a grand jury to "take cognizance of all matters brought before it" granted a Superior Court grand jury jurisdiction to vote on and return indictments in federal court. The district court erred by adopting this jurisdictional definition.

To interpret the meaning of a statute, the Court begins with the "language of the statute itself." *Caraco Pharm. Labs., Ltd. v. Novo*

*Nordisk A/S,* 566 U.S. 399, 412 (2012) (quoting *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989)). "When the meaning of a word in a statute is not clear from the language of the statute itself, 'there must be recourse to all the aids available in the process of construction, to history and analogy and practice as well as to the dictionary." *Communications Sys., Inc. v. FCC*, 595 F.2d 797, 800 (D.C. Cir. 1978) (quoting *United Shoe Workers of Am. v. Bedell*, 506 F.2d 174, 179 (1974)). Moreover, single words of a statute are not considered in isolation. *Hibbs v. Winn*, 542 U.S. 88, 101 (2004). Courts must follow "the cardinal rule that statutory language must be read in context [since] a phrase gathers meaning from the words around it." *Id.* (quoting *Gen. Dynamics Land Sys., Inc. v. Cline*, 540 U.S. 581, 596 (2004) (modification in original)).

Nothing in § 11-1916(a) explicitly empowers a Superior Court grand jury to return an indictment to a different court. Deciding whether § 11-1916(a) empowers a Superior Court grand jury to return a federal indictment in federal court, then, requires interpretation of the statute's language allowing a D.C. grand jury to "take cognizance of all matters brought before it." D.C. Code 11-1916(a).

To "take cognizance" does not plainly refer to the authority to return an indictment to a court. Rather, "cognizance" is a word with many possible definitions. "Cognizance" means "knowledge," "apprehension by the understanding," or "conscious recognition." *Cognizance*, Webster's New Int'l Dictionary 520 (2d ed. 1961). But "cognizance" also speaks to "Jurisdiction, or the power given by law to hear and decide controversies." *Id.*

Read generously, these two definitions could speak to either of the two traditional functions of a grand jury. As the district court recognized, grand juries traditionally "engage in two central activities: investigating potential crimes and voting on whether to return indictments in those matters." A189 (citing *United States v. Doe Corp.*, 59 F.4th 301, 304 (7th Cir. 2023)). The district court concluded that Congress intended "cognizance" to have a jurisdictional meaning—granting a Superior Court grand jury the jurisdiction to return an indictment to federal court. A190.

But the full text of § 11-1916(a) clarifies that it is referring to a grand jury's investigative function, not its jurisdiction to consider a

criminal case and return an indictment. Section 11-1916(a) empowers a D.C. grand jury to take cognizance of all matters "regardless of whether an indictment is returnable in the Federal or District of Columbia Courts." This language differentiates between *taking cognizance* and *returning an indictment* and thereby conveys that in this context, "to take cognizance" refers to the traditional function of grand juries to investigate matters regardless of the possibility of a criminal prosecution.

This distinction makes sense given grand juries' long history of investigating governmental malfeasance or nonfeasance regardless of whether the investigation is intended to result in an indictment. This traditional function of the grand jury is codified in both federal and state statutes. Under federal law, a grand jury may issue a report "concerning noncriminal misconduct, malfeasance, or misfeasance in office … by an appointed public officer or employee." 18 U.S.C. § 3333. Grand juries across the country are tasked with investigating local jails and prisons. *Serving on a Maryland Grand Jury*, Maryland Judiciary 3 (Apr. 2019); Ala. Code § 12-16-191; Ark. Rev. Stat. § 16-85-503(a)(2); Ga. Code Ann. § 15-12-71; Minn. Stat. § 628.61(2); N.C. Gen. Stat. 15A-628(a)(5); Nev.

Rev. Stat. § 172.185; Ohio Rev. Code Ann. § 2939.21; Okla. Stat. tit. 22, § 338; Or. Rev. Stat. § 132.440; S.D. Codified Laws § 23A-5-9; Tenn. R. Crim. P. 6(e)(3). Some grand juries are given free rein to inspect government offices. Ga. Code Ann. § 15-12-71; Mo. Rev. Stat. § 540.031; N.C. Gen. Stat. 15A-628(a)(5); N.M Stat. Ann. § 31-6-7; Tenn. R. Crim. P. 6(e)(3). This power often includes authority to inspect government records. Ala. Code § 12-16-192; Ala. Code § 12-16-193; Ala. Code § 12-16-194; Ark. Rev. Stat. § 16-85-503(d); Ga. Code Ann. § 15-12-71; Nev. Rev. Stat. § 172.185; S.D. Codified Laws § 23A-5-9; Tenn. R. Crim. P. 6(e)(5). Grand juries are also tasked with ferreting out non-criminal government corruption. Ark. Rev. Stat. § 16-85-503(a)(3); Minn. Stat. § 628.61(3); N.Y. Crim. Proc. Law § 190.55; Okla. Stat. tit. 22, § 338; Utah Code Ann. § 77-10a-17. Nebraska convenes a grand jury each time someone dies in law enforcement custody. Neb. Rev. State. § 29-1401. And Alaska empowers grand juries to investigate public welfare and issue reports recommending improvements to the same. Alaska Stat. § 12.40.030. None of these subjects necessarily results in criminal

charges or indictments, but they are nonetheless well within the ambit of grand juries.

It is thus not unusual that statutory authority for a D.C. grand jury "to take cognizance of all matters brought before it" is just that, the ability of the D.C. grand jury to educate itself on issues of public concern regardless of whether the investigation is undertaken with the goal of securing a criminal indictment.

It also is not difficult to conjure an example of when this power may be utilized. Perhaps a D.C. grand jury might investigate the efficacy of the D.C. Public Schools Superintendent. Or perhaps a Superior Court grand jury is convened because there are rumors that the director of D.C.'s Office of Disability Rights rarely shows up to work and when he does, he does not make any effort to advance his office's mission. Neither of these examples stretches the imagination.

Reading § 11-1916(a) to empower investigation regardless of criminality makes further sense because Congress has not given federal grand juries such broad authority. Non-criminal investigation authority of a federal grand jury is limited. *See* 18 U.S.C. § 3333. Congress created

special grand juries to issue reports recommending disciplinary action or removal of public officials for nonfeasance or misfeasance in the narrow arena related to organized crime. *Id.* Even a report concerning non-criminal misconduct must maintain some connection to organized crime. *See* 18 U.S.C. § 3333; Department of Justice Manual CRM 1-499, § 159. Federal grand juries, therefore, have no authority to investigate non-criminal matters outside of the limited exceptions in 18 U.S.C. § 3333. Without § 11-1916(a), then, no grand jury would have the authority to investigate public institutions like the D.C. Jail, the D.C. libraries, or D.C. Parks and Recreation facilities.

The district court found a broad reading of § 11-1916(a) to be "consistent with a jurisdictional grant covering all grand-jury functions, not one in particular." A190. But had Congress intended for the ability to "take cognizance" of a matter to mean that a Superior Court grand jury has jurisdiction to return an indictment in federal court it would have said so. "When Congress has spoken in a statute, we assume that it says what it means and that the statute means what it says." *Judge Rotenberg Educ. Ctr., Inc. v. USFDA*, 3 F.4th 390, 400 (D.C. Cir. 2021).

And we assume that Congress would not hide the extraordinary ability of the Superior Court grand jury to return indictments in two different court systems within the word "cognizance." Congress does not hide "elephants in mouseholes." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001).

Moreover, we know that when Congress wants to grant a body jurisdiction over certain matters, it knows exactly how to do so. Congress explicitly outlined the jurisdiction of five different D.C. courts in the same legislation permitting a D.C. grand jury "to take cognizance" of all matters brought before it. *See* D.C. Code §§ 11-921-925 (Superior Court jurisdiction); §§ 11-721-723 (District of Columbia Court of Appeals jurisdiction); § 11-1101 (Family Court of the Superior Court jurisdiction); § 11-1201 (Tax Division of the Superior Court jurisdiction); § 11-1321 (Small Claims and Conciliation Branch of the Superior Court jurisdiction). And in doing so, Congress used the word "jurisdiction," which is exactly what it would have used in § 11-1916(a) if it intended for the Superior Court grand jury to have jurisdiction to return indictments in the federal courts.

38

## B. The District Court Misread § 11-1916(a).

The district court's conclusion that § 11-1916(a) is a jurisdictional grant to a Superior Court grand jury to return a federal indictment in federal court was wrong. In reaching this conclusion, the district court relied on the D.C. Court of Appeals decision in *Hackney v. United States*, 389 A.2d 1336 (D.C. 1978) and the idea that it would not make sense for § 11-1916(a) to cover only one of a grand jury's two traditional functions. Neither pillar of reasoning can hold the weight of the district court's decision.

### 1. *Hackney* does not control.

The district court believed that the D.C. Court of Appeals in *Hackney* had considered and rejected the argument that § 11-1916(a) concerns a grand jury's power to investigate but not the power to return an indictment. A189. This is not the case. In *Hackney*, a defendant in the Superior Court was indicted by a grand jury convened by the U.S. District Court. That defendant challenged the validity of the indictment, arguing that the D.C. Code "permits a grand jury only to 'take cognizance' of a matter ultimately proper before another court, but not to return an

39

indictment with respect to such matters." *Hackney*, 389 A.2d at 1339. The *Hackney* court rejected this argument as "overly literal" and concluded that it was unpersuasive. *Id.* It is clear from *Hackney*, however, that the defendant did not offer an alternative reading of "take cognizance" like Mr. Stewart offers here. And it is well known that "[j]udicial decisions do not stand as binding 'precedent' for points that were not raised, not argued, and hence not analyzed." *Legal Servs. Corp. v. Velazquez*, 531 U.S. 533, 557 (2001) (Scalia, J., dissenting); *see also Common Cause v. FEC*, 108 F.3d 413, 416 (D.C. Cir. 1997).

Moreover, *Hackney* did not even interpret § 11-1916(a). Rather, the *Hackney* court examined a D.C. Code provision different than the one at issue here. Section § 11-1916(a) was originally enacted as D.C. Code § 11-1903 in 1970 when Congress first created the D.C. Superior Court. Pub. L. No. 91-358, 84 Stat. 515 (July 29, 1970). In the system established in 1970, the juries of the federal courts and the Superior Court were much more intertwined. At that time, "[j]urors serving within the District of Columbia [had] the same qualifications as provided for jurors in the Federal courts," and "[t]here [was] a single system in the District of

40

Columbia for the selection of jurors for both Federal and District of Columbia courts." *Id.* That "selection system [was] prescribed by Federal law and executed in accordance therewith as provided by the United States District Court for the District of Columbia." *Id.*

Section 11-1916(a) was not created until 1986. At that point, Congress elected to create two separate jury selection systems in the District of Columbia—one for federal court and one for the Superior Court. Pub. L. No. 99-650, 100 Stat. 3635 (Nov. 14, 1986); D.C. Code § 11-1901. Qualification for serving as a juror in Superior Court was no longer tied to eligibility to serve as a juror in federal court. D.C. Code § 11-1906. The 1986 congressional amendments to the D.C. Code moved § 11-1903 to its current location at § 11-1916(a). The 1986 Congressional amendments to the D.C. jury systems remain in effect today.

The district court found that § 11-1916(a) should not be interpreted differently than the now-repealed § 11-1903 because a "'change in arrangement' in a statute 'cannot be regarded as altering the scope and purpose of the enactment' absent Congress's 'clearly expressed' intent to 'change the[] effect' of the preexisting law." A190 (quoting *Fourco Glass*

*Co. v. Transmirra Prods. Corp.*, 353 U.S. 222, 227 (1957)).  According to the district court, there was no evidence that Congress meant to alter the "mutual indictment power" that existed when Congress enacted § 11-1916(a) in 1986.

The district court failed to appreciate, however, that the 1986 legislation contains considerable evidence that Congress intended to separate the two D.C. jury systems, which would include excising any "mutual indictment power" from § 11-1916(a).  In particular, the 1986 legislation addressed the interaction of the two jury systems at length. In D.C. Code § 11-1917, Congress laid out the "[c]oordination and cooperation of the courts."  This section provides that to "the extent feasible, the Superior Court and the United States District Court shall consider the respective needs of each court in the qualification, selection, and service of jurors.  Nothing in this chapter shall be construed to prevent such courts from entering into any agreement for sharing resources and facilities (including automated data processing hardware and software, forms, postage, and other resources)."  D.C. Code § 11-1917.

This evidence all indicates that the jury systems were intended to operate separately without any overlap other than that permitted by § 11-1917.

Regardless, the nature of the 1970 legislation indicates that § 11-1903 (now § 11-1916(a)) never contained any mutual indictment power. When Congress created the D.C. Superior Court in 1970 and enacted § 11-1903, there was only one jury system in the District. There would have been no need to confirm that a grand jury could return an indictment to either court—this was obvious under that original system. And when Congress excised the D.C. Superior Court from the federal court jury system in 1986—and moved the "take cognizance" language to § 11-1916(a)—it would have made no sense to grant the Superior Court grand jury authority to indict in federal court. The entire point of the 1986 legislation was to separate the jury systems, not shackle them together.

*Hackney* also relied primarily on the "identical" nature of the two jury systems to hold that there was no concern with one court's grand jury returning an indictment in the other court. 389 A.2d at 1340. But the juries of the two courts are no longer identical. *Compare* Jury

43

Selection Plan for the Random Selection of Grand and Petit Jurors, United States District Court for the District of Columbia (as amended May 17, 2022)[3] *with* Jury Plan for the Superior Court of the District of Columbia (May 28, 2020)[4]; *see also* A116-17.

### 2. The two functions of a grand jury are addressed in different statutory schemes.

Contrary to the district court's opinion, it makes perfect sense that § 11-1916(a) would speak only to one function of a Superior Court grand jury because an entirely separate statutory scheme governs a Superior Court grand jury's indictment function—The Superior Court Rules of Criminal Procedure.

Superior Court Rule of Criminal Procedure 6—much like its federal counterpart—speaks to a Superior Court grand jury's authority to indict. It provides that a Superior Court "grand jury may indict only if at least 12 jurors concur" and that an indictment must be returned in open court. Sup. Ct. R. Crim. P. 6(f). And the Superior Court Rules of Criminal

[3] https://www.dcd.uscourts.gov/sites/dcd/files/D.D.C.JurySelectionPlan-20220517.pdf

[4] https://www.dccourts.gov/sites/default/files/matters-docs/JURY-PLAN-eff-May-2020.pdf

Procedure, enacted soon after the Superior Court was established, have always governed the grand jury's ability to return an indictment. Super. Ct. R. Crim. P. 6(f) (1971). It, therefore, was never necessary for § 11-1916(a) to speak to the power of a grand jury to return an indictment. That authority has derived from the Superior Court Rules of Criminal Procedure for the Superior Court's entire existence.

The bifurcating of the powers of the Superior Court grand jury between the D.C. Code and the Superior Court Rules of Criminal Procedure aligns with its federal analog. The authority of a federal grand jury to return an indictment in a federal court is not addressed in the U.S. Code. Instead, the power to indict is addressed only in Federal Rule of Criminal Procedure 6. The only statutory grants of power to a federal grand jury in the U.S. Code concern its authority to investigate. *See* 18 U.S.C. § 3332 (grand jury impaneled "to inquire into offenses against the criminal laws of the United States"); § 3333 (special grand jury impaled to investigate "noncriminal misconduct, malfeasance, or misfeasance in office involving organized criminal activity by an appointed public officer

45

or employee as the basis for a recommendation of removal or disciplinary action" or "organized crime conditions in the district").

If Congress had intended for § 11-1916(a) to empower the Superior Court grand jury to return an indictment in federal court, it would have said exactly that. At bottom, § 11-1916(a) provides a grand jury the power to investigate, not authority to indict—much less in federal court.

### C. The Federal Rules of Criminal Procedure and § 11-1916(a) can be Read Harmoniously, and if not, the Federal Rules Control.

Even if § 11-1916(a) provides a grand jury the authority to return an indictment, that power must nevertheless be interpreted harmoniously with the Federal Rules of Criminal Procedure so as to give effect to each to the greatest extent possible.

"[C]ourts are not at liberty to pick and choose among congressional enactments, and when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." *Morton v. Mancari,* 417 U.S. 535, 551 (1974). Courts have a "duty to harmonize the provisions" of all statutes "and render each effective." *Adirondack Med. Ctr. v. Sebelius,*

740 F.3d 692, 698-99 (D.C. Cir. 2014). There "can be no justification for needlessly rendering [these two provisions] in conflict if they can be interpreted harmoniously." *Make the Road N.Y. v. Wolf*, 962 F.3d 612, 642 (D.C. Cir. 2020) (Rao, J., dissenting) (modification in original) (quoting Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 180 (2012)).

Under the district court's reading of § 11-1916(a), a Superior Court grand jury is permitted to return an indictment in either the Superior or federal courts. Section 11-1916(a), therefore, empowers a Superior Court grand jury to vote on and return a federal indictment to federal court only if the laws and rules applicable to the federal court permit it to do so— *i.e.*, if it is "returnable" there. And the Federal Rules of Criminal Procedure govern whether an indictment is "returnable" in federal court. To be returnable, the Federal Rules require that "the indictment: 1) identifies one or more defendants; 2) actually charges a crime; 3) is 'signed by an attorney from the government'; and 4) was returned by a particular grand jury." A184 (citing Fed. R. Crim. P. 7(c)(1); 6(a); U.S. Const. amend. V).

Moreover, nothing about Mr. Stewart's proposed reading of the Federal Rules would preclude a federal grand jury from returning an indictment to the Superior Court. To the extent that § 11-1916(a) does authorize returning indictments in a different court, that power is granted to any "grand jury serving in the District of Columbia." The 2002 Amendments to the Federal Rules, then, did not alter the ability of the federal grand jury to return a Superior Court indictment or the Superior Court to accept an indictment returned by a federal grand jury.

Should the Court find that the Federal Rules, as amended in 2002, are irreconcilable with § 11-1916(a) of the D.C. Code, then the later in time statute controls and the district court's decision must be reversed. *United States v. Tynen*, 78 U.S. 88, 92 (1870) ("if the two [acts] are repugnant in any of their provisions, the latter act, without any repealing clause, operates to the extent of the repugnancy as a repeal of the first…"). And here, the later-in-time statute is the 2002 amendments to the Federal Rules of Criminal Procedure.

## III. THE DISTRICT COURT'S RULING HAS NO LIMITING PRINCIPLE

The district court's interpretation of the interaction between § 11-1916(a) and the Federal Rules of Criminal Procedure suffers from one final, fatal flaw—it lacks a limiting principle. And statutes cannot be interpreted to cause absurd results.

The "absurd results doctrine … embodies 'the long-standing rule that a statute should not be construed to produce an absurd result.'" *Ctr. For Bio. Diversity v. EPA*, 722 F.3d 401, 411 (D.C. Cir. 2013) (quoting *Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1068 (D.C. Cir. 1998). This rule of statutory interpretation trumps even the plain meaning doctrine. A court is not "bound by the plain meaning of the statutory words" if it "would lead to 'absurd results … or would thwart the obvious purpose of the statute.'" *Suburban Transit Corp. v. ICC*, 784 F.2d 1129, 1130 (D.C. Cir. 1986) (quoting *Nat'l Sall Shipments Traffic Conf., Inc. v. Civil Aeronautics Bd.*, 618 F.2d 819, 827 (D.C. Cir. 1980)). This rule reflects that statutes should be construed to "avoid injustice." *London & Lancashire Indem. Co. of Am. v. Smoot*, 287 F. 952, 956 (D.C. Cir. 1923).

The district court has interpreted § 11-1916(a) to the point of absurdity because its reading permits a Superior Court grand jury to return an indictment in *any* federal district court in the country.

The language of § 11-1916(a) is not constrained to the D.C. Superior Court and the U.S. District Court for the District of Columbia. Rather, the statute provides that "a grand jury serving in the District of Columbia" may return an indictment "in the Federal or District of Columbia courts." The "Federal . . . courts" are many and, accepting the district court's interpretation of § 11-1916(a), nothing in that statute would limit the Superior Court grand jury's ability to return an indictment to the U.S. District Court for the District of Columbia alone. The district court's reading leads to the absurd result that Congress would have authorized the Superior Court grand jury to return an indictment in any federal district court in the country—from the U.S. District Court for the District of the Virgin Islands to the U.S. District Court for the District of Guam. This cannot possibly be the result that Congress intended. The district court's decision must be reversed.

# CONCLUSION

The Federal Rules of Criminal Procedure govern *all* criminal cases in *all* federal courts. And the Federal Rules do not permit a federal district court to accept an indictment returned by a D.C. Superior Court grand jury. The district court's decision otherwise should be reversed, and the indictment must be rejected because it was returned by a grand jury with no power to do so in federal court.

Respectfully submitted,
A. J. Kramer
Federal Public Defender


      /s/
Matthew L. Farley
Assistant Federal Public Defender
625 Indiana Avenue, N.W.
Washington, D.C. 20004
(202) 208-7500
Matthew_Farley@fd.org

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing Appellant's Opening Brief was prepared in Century Schoolbook 14-point proportionally spaced font and contains 9,738 words in compliance the type-volume limitations of Fed. R. App. P. 32(a)(7).

_____/s/_____
Matthew L. Farley
Assistant Federal Public Defender

# ADDENDUM

# ADDENDUM

## TABLE OF CONTENTS

D.C. Code § 11-1916 ................................................................. 3a

Federal Rule of Criminal Procedure 1 ................................................. 4a

Federal Rule of Criminal Procedure 6 ................................................. 6a

**D.C. Code § 11-1916**

**(a)** A grand jury serving in the District of Columbia may take cognizance of all matters brought before it regardless of whether an indictment is returnable in the Federal or District of Columbia courts.

**(b)** If the United States Attorney for the District of Columbia certifies in writing to the chief judge that an additional grand jury is required, the judge may in his or her discretion order an additional grand jury summoned which shall be drawn at such time as he or she designates. Unless discharged by order of the judge, the additional grand jury shall serve until the end of the term for which it is drawn.

# Federal Rule of Criminal Procedure 1. Scope; Definitions.

**(a) Scope.**

**(1) *In General.*** These rules govern the procedure in all criminal proceedings in the United States district courts, the United States courts of appeals, and the Supreme Court of the United States.

**(2) *State or Local Judicial Officer.*** When a rule so states, it applies to a proceeding before a state or local judicial officer.

**(3) *Territorial Courts.*** These rules also govern the procedure in all criminal proceedings in the following courts:

**(A)** the district court of Guam;

**(B)** the district court for the Northern Mariana Islands, except as otherwise provided by law; and

**(C)** the district court of the Virgin Islands, except that the prosecution of offenses in that court must be by indictment or information as otherwise provided by law.

**(4) *Removed Proceedings.*** Although these rules govern all proceedings after removal from a state court, state law governs a dismissal by the prosecution.

**(5) *Excluded Proceedings.*** Proceedings not governed by these rules include:

**(A)** the extradition and rendition of a fugitive;

**(B)** a civil property forfeiture for violating a federal statute;

**(C)** the collection of a fine or penalty;

**(D)** a proceeding under a statute governing juvenile delinquency to the extent the procedure is inconsistent with the statute, unless Rule 20(d) provides otherwise;

**(E)** a dispute between seamen under 22 U.S.C. §§256–258; and

**(F)** a proceeding against a witness in a foreign country under 28 U.S.C. §1784.

**(b) Definitions.** The following definitions apply to these rules:

**(1)** "Attorney for the government" means:

**(A)** the Attorney General or an authorized assistant;

**(B)** a United States attorney or an authorized assistant;

**(C)** when applicable to cases arising under Guam law, the Guam Attorney General or other person whom Guam law authorizes to act in the matter; and

**(D)** any other attorney authorized by law to conduct proceedings under these rules as a prosecutor.

**(2)** "Court" means a federal judge performing functions authorized by law.

**(3)** "Federal judge" means:

**(A)** a justice or judge of the United States as these terms are defined in 28 U.S.C. §451;

**(B)** a magistrate judge; and

**(C)** a judge confirmed by the United States Senate and empowered by statute in any commonwealth, territory, or possession to perform a function to which a particular rule relates.

**(4)** "Judge" means a federal judge or a state or local judicial officer.

**(5)** "Magistrate judge" means a United States magistrate judge as defined in 28 U.S.C. §§631–639.

**(6)** "Oath" includes an affirmation.

**(7)** "Organization" is defined in 18 U.S.C. §18.

**(8)** "Petty offense" is defined in 18 U.S.C. §19.

**(9)** "State" includes the District of Columbia, and any commonwealth, territory, or possession of the United States.

**(10)** "State or local judicial officer" means:

**(A)** a state or local officer authorized to act under 18 U.S.C. §3041; and

**(B)** a judicial officer empowered by statute in the District of Columbia or in any commonwealth, territory, or possession to perform a function to which a particular rule relates.

**(11)** "Telephone" means any technology for transmitting live electronic voice communication.

**(12)** "Victim" means a "crime victim" as defined in 18 U.S.C. §3771(e).

**(c)** Authority of a Justice or Judge of the United States. When these rules authorize a magistrate judge to act, any other federal judge may also act.

# Federal Rule of Criminal Procedure 6. The Grand Jury.

**(a) Summoning a Grand Jury.**

**(1) *In General.*** When the public interest so requires, the court must order that one or more grand juries be summoned. A grand jury must have 16 to 23 members, and the court must order that enough legally qualified persons be summoned to meet this requirement.

**(2) *Alternate Jurors.*** When a grand jury is selected, the court may also select alternate jurors. Alternate jurors must have the same qualifications and be selected in the same manner as any other juror. Alternate jurors replace jurors in the same sequence in which the alternates were selected. An alternate juror who replaces a juror is subject to the same challenges, takes the same oath, and has the same authority as the other jurors.

**(b) Objection to the Grand Jury or to a Grand Juror.**

**(1) *Challenges.*** Either the government or a defendant may challenge the grand jury on the ground that it was not lawfully drawn, summoned, or selected, and may challenge an individual juror on the ground that the juror is not legally qualified.

**(2) *Motion to Dismiss an Indictment.*** A party may move to dismiss the indictment based on an objection to the grand jury or on an individual juror's lack of legal qualification, unless the court has previously ruled on the same objection under Rule 6(b)(1). The motion to dismiss is governed by 28 U.S.C. §1867 (e). The court must not dismiss the indictment on the ground that a grand juror was not legally qualified if the record shows that at least 12 qualified jurors concurred in the indictment.

**(c) Foreperson and Deputy Foreperson.** The court will appoint one juror as the foreperson and another as the deputy foreperson. In the foreperson's absence, the deputy foreperson will act as the foreperson. The foreperson may administer oaths and affirmations and will sign all indictments. The foreperson—or another juror designated by the foreperson—will record the number of jurors concurring in every indictment and will file the record with the clerk, but the record may not be made public unless the court so orders.

**(d) Who May Be Present.**

**(1) *While the Grand Jury Is in Session.*** The following persons may be present while the grand jury is in session: attorneys for the government, the witness being questioned, interpreters when needed, and a court reporter or an operator of a recording device.

**(2) *During Deliberations and Voting.*** No person other than the jurors, and any interpreter needed to assist a hearing-impaired or speech-impaired juror, may be present while the grand jury is deliberating or voting.

**(e) Recording and Disclosing the Proceedings.**

**(1) *Recording the Proceedings.*** Except while the grand jury is deliberating or voting, all proceedings must be recorded by a court reporter or by a suitable recording device. But the validity of a prosecution is not affected by the unintentional failure to make a recording. Unless the court orders otherwise, an attorney for the government will retain control of the recording, the reporter's notes, and any transcript prepared from those notes.

**(2) *Secrecy.***

**(A)** No obligation of secrecy may be imposed on any person except in accordance with Rule 6(e)(2)(B).

**(B)** Unless these rules provide otherwise, the following persons must not disclose a matter occurring before the grand jury:

**(i)** a grand juror;

**(ii)** an interpreter;

**(iii)** a court reporter;

**(iv)** an operator of a recording device;

**(v)** a person who transcribes recorded testimony;

**(vi)** an attorney for the government; or

**(vii)** a person to whom disclosure is made under Rule 6(e)(3)(A)(ii) or (iii).

**(3) *Exceptions.***

**(A)** Disclosure of a grand-jury matter—other than the grand jury's deliberations or any grand juror's vote—may be made to:

**(i)** an attorney for the government for use in performing that attorney's duty;

**(ii)** any government personnel—including those of a state, state subdivision, Indian tribe, or foreign government—that an attorney for

the government considers necessary to assist in performing that attorney's duty to enforce federal criminal law; or

**(iii)** a person authorized by 18 U.S.C. §3322.

**(B)** A person to whom information is disclosed under Rule 6(e)(3)(A)(ii) may use that information only to assist an attorney for the government in performing that attorney's duty to enforce federal criminal law. An attorney for the government must promptly provide the court that impaneled the grand jury with the names of all persons to whom a disclosure has been made, and must certify that the attorney has advised those persons of their obligation of secrecy under this rule.

**(C)** An attorney for the government may disclose any grand-jury matter to another federal grand jury.

**(D)** An attorney for the government may disclose any grand-jury matter involving foreign intelligence, counterintelligence (as defined in 50 U.S.C. 3003), or foreign intelligence information (as defined in Rule 6(e)(3)(D)(iii)) to any federal law enforcement, intelligence, protective, immigration, national defense, or national security official to assist the official receiving the information in the performance of that official's duties. An attorney for the government may also disclose any grand-jury matter involving, within the United States or elsewhere, a threat of attack or other grave hostile acts of a foreign power or its agent, a threat of domestic or international sabotage or terrorism, or clandestine intelligence gathering activities by an intelligence service or network of a foreign power or by its agent, to any appropriate federal, state, state subdivision, Indian tribal, or foreign government official, for the purpose of preventing or responding to such threat or activities.

**(i)** Any official who receives information under Rule 6(e)(3)(D) may use the information only as necessary in the conduct of that person's official duties subject to any limitations on the unauthorized disclosure of such information. Any state, state subdivision, Indian tribal, or foreign government official who receives information under Rule 6(e)(3)(D) may use the information only in a manner consistent with any guidelines issued by the Attorney General and the Director of National Intelligence.

**(ii)** Within a reasonable time after disclosure is made under Rule 6(e)(3)(D), an attorney for the government must file, under seal, a notice with the court in the district where the grand jury convened stating that

such information was disclosed and the departments, agencies, or entities to which the disclosure was made.

**(iii)** As used in Rule 6(e)(3)(D), the term "foreign intelligence information" means:

**(a)** information, whether or not it concerns a United States person, that relates to the ability of the United States to protect against—

• actual or potential attack or other grave hostile acts of a foreign power or its agent;

• sabotage or international terrorism by a foreign power or its agent; or

• clandestine intelligence activities by an intelligence service or network of a foreign power or by its agent; or

**(b)** information, whether or not it concerns a United States person, with respect to a foreign power or foreign territory that relates to—

• the national defense or the security of the United States; or

• the conduct of the foreign affairs of the United States.

**(E)** The court may authorize disclosure—at a time, in a manner, and subject to any other conditions that it directs—of a grand-jury matter:

**(i)** preliminarily to or in connection with a judicial proceeding;

**(ii)** at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury;

**(iii)** at the request of the government, when sought by a foreign court or prosecutor for use in an official criminal investigation;

**(iv)** at the request of the government if it shows that the matter may disclose a violation of State, Indian tribal, or foreign criminal law, as long as the disclosure is to an appropriate state, state-subdivision, Indian tribal, or foreign government official for the purpose of enforcing that law; or

**(v)** at the request of the government if it shows that the matter may disclose a violation of military criminal law under the Uniform Code of Military Justice, as long as the disclosure is to an appropriate military official for the purpose of enforcing that law.

**(F)** A petition to disclose a grand-jury matter under Rule 6(e)(3)(E)(i) must be filed in the district where the grand jury convened.

Unless the hearing is ex parte—as it may be when the government is the petitioner—the petitioner must serve the petition on, and the court must afford a reasonable opportunity to appear and be heard to:

    **(i)** an attorney for the government;

    **(ii)** the parties to the judicial proceeding; and

    **(iii)** any other person whom the court may designate.

    **(G)** If the petition to disclose arises out of a judicial proceeding in another district, the petitioned court must transfer the petition to the other court unless the petitioned court can reasonably determine whether disclosure is proper. If the petitioned court decides to transfer, it must send to the transferee court the material sought to be disclosed, if feasible, and a written evaluation of the need for continued grand-jury secrecy. The transferee court must afford those persons identified in Rule 6(e)(3)(F) a reasonable opportunity to appear and be heard.

    **(4)** *Sealed Indictment.* The magistrate judge to whom an indictment is returned may direct that the indictment be kept secret until the defendant is in custody or has been released pending trial. The clerk must then seal the indictment, and no person may disclose the indictment's existence except as necessary to issue or execute a warrant or summons.

    **(5)** *Closed Hearing.* Subject to any right to an open hearing in a contempt proceeding, the court must close any hearing to the extent necessary to prevent disclosure of a matter occurring before a grand jury.

    **(6)** *Sealed Records.* Records, orders, and subpoenas relating to grand-jury proceedings must be kept under seal to the extent and as long as necessary to prevent the unauthorized disclosure of a matter occurring before a grand jury.

    **(7)** *Contempt.* A knowing violation of Rule 6, or of any guidelines jointly issued by the Attorney General and the Director of National Intelligence under Rule 6, may be punished as a contempt of court.

    **(f) Indictment and Return.** A grand jury may indict only if at least 12 jurors concur. The grand jury—or its foreperson or deputy foreperson—must return the indictment to a magistrate judge in open court. To avoid unnecessary cost or delay, the magistrate judge may take the return by video teleconference from the court where the grand jury sits. If a complaint or information is pending against the defendant and

12 jurors do not concur in the indictment, the foreperson must promptly and in writing report the lack of concurrence to the magistrate judge.

**(g) Discharging the Grand Jury.** A grand jury must serve until the court discharges it, but it may serve more than 18 months only if the court, having determined that an extension is in the public interest, extends the grand jury's service. An extension may be granted for no more than 6 months, except as otherwise provided by statute.

**(h) Excusing a Juror.** At any time, for good cause, the court may excuse a juror either temporarily or permanently, and if permanently, the court may impanel an alternate juror in place of the excused juror.

**(i) "Indian Tribe" Defined.** "Indian tribe" means an Indian tribe recognized by the Secretary of the Interior on a list published in the Federal Register under 25 U.S.C. §479a–1.