ORAL ARGUMENT NOT YET SCHEDULED

BRIEF FOR APPELLEE

---

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

No. 25-3115

---

UNITED STATES OF AMERICA, Appellee,

v.

KEVONTAE STEWART, Appellant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

JEANINE FERRIS PIRRO
United States Attorney

CHRISELLEN R. KOLB
NICHOLAS P. COLEMAN
CAELAINN CARNEY
* TIMOTHY R. CAHILL
D.C. Bar #1032630
Assistant United States Attorneys
* Counsel for Oral Argument
601 D Street, NW, Room 6.232
Washington, D.C. 20530
Timothy.Cahill@usdoj.gov
(202) 252-6829

No. 25-mj-225 (ZMF)

## Certificate of Parties, Rulings, and Related Cases

Pursuant to D.C. Circuit Rule 28(a)(1), appellee states as follows:

### Parties and Amici

The parties to this appeal are appellant, Kevontae Stewart, and appellee, the United States of America. There are no amici.

### Rulings Under Review

This is an appeal from an order issued by the Hon. James E. Boasberg on November 20, 2025, finding that the indictment returned in this case by a D.C. Superior Court grand jury was validly issued under authority expressly granted by Congress, and therefore directing the criminal-duty magistrate judge to accept the indictment (Appendix (A) 180-95).

### Related Cases

Appellee is unaware of any related cases.

## Statutes and Regulations

Pursuant to D.C. Circuit Rule 28(a)(5), appellee states that all pertinent statutes and regulations are contained in the Addendum to the Brief for Appellant.

# Table of Contents


Counterstatement of the Case .......... 1

The Indictment Litigation .......... 2

Summary of Argument .......... 6

Argument .......... 8

The Indictment in This Case Was Validly Issued Under Authority Expressly Granted by Congress. .......... 8

A. Congress Authorized Grand Juries in D.C. to Return Indictments in Either Federal District Court or D.C. Superior Court. .......... 8

1. Standard of Review and Applicable Legal Principles .......... 8

2. Additional Background .......... 9

3. D.C. Code § 11-1916(a) Authorized the Indictment in This Case. .......... 15

B. Amendments to the Federal Rules of Criminal Procedure in 2002 Did Not Implicitly Repeal D.C. Code § 11-1916(a). .......... 26

1. Standard of Review and Applicable Legal Principles .......... 26

2. Additional Background .......... 28

3. D.C. Code § 11-1916(a) Does Not Irreconcilably Conflict with the Federal Rules, and Congress Did Not Demonstrate a Clear and Manifest Intention to Repeal the Statute. .......... 31

Conclusion .......... 38

# TABLE OF AUTHORITIES*

## Cases

* *Atkinson v. United States*, 295 A.2d 899 (D.C. 1972)............. 10, 13, 22, 34

*Beverly v. United States*, 468 F.2d 732 (5th Cir. 1972)............................ 19

*Christian v. United States*, 394 A.2d 1 (D.C. 1978) ............................ 11, 16

*Consumer Fed. of Am. v. United States Dep't of Health & Human Servs.*, 83 F.3d 1497 (D.C. Cir. 1996) .................................. 21

*Cook County v. United States ex rel. Chandler*, 538 U.S. 119 (2003) ........ 27

*Deal v. United States,* 508 U.S. 129 (1993) ....................................... 17, 24

*Deaver v. Seymour*, 822 F.2d 66 (D.C. Cir. 1987).................................... 26

*Demby v. Schweiker*, 671 F.2d 507 (D.C. Cir. 1981) ................................ 36

* *Epic Sys. Corp. v. Lewis*, 584 U.S. 497 (2018).................................. 27, 31

*Ewing v. California*, 538 U.S. 11 (2003) .................................................. 26

*Georgia v. Heinze*, 171 F.4th 1335 (11th Cir. 2026)................................. 33

* *Hackney v. United States*, 389 A.2d 1336 (D.C. 1978). ..... 10, 11, 13, 16, 22

*In re Grand Jury Investigation*, 916 F.3d 1047 (D.C. Cir. 2019)............... 16

*In re United States*, 441 F.3d 44 (1st Cir. 2006) ..................................... 15

*Lorillard v. Pons*, 434 U.S. 575 (1978).................................................... 22

---

* Authorities upon which we chiefly rely are marked with asterisks.

*Madley v. U.S. Parole Comm'n*, 278 F.3d 1306 (D.C. Cir. 2002)...............22

* *Maine Cmty. Health Options v. United States*, 590 U.S. 296 (2020)...27, 31

*Martin v. Federal Bureau of Investigation*, 145 F.4th 1345 (D.C. Cir. 2025)........................................................................15

*Midland Asphalt Corp. v. United States*, 489 U.S. 794 (1989) ...................2

*Morton v. Mancari*, 417 U.S. 535 (1974)................................................27

*Palmore v. United States*, 411 U.S. 389 (1973)......................................33

*Romag Fasteners, Inc. v. Fossil, Inc.*, 590 U.S. 212 (2020).....................32

*Tennessee v. Davis*, 100 U.S. 257 (1879) ................................................33

*United States v. Allen*, 729 F. Supp. 120 (D.D.C. 1989)......................14, 16

*United States v. Brown*, 2007 WL 2007513 (D.D.C. July 9, 2007)......14, 16

*United States v. Cessa*, 856 F.3d 370 (5th Cir. 2017)..........................24, 25

*United States v. Cordova*, 806 F.3d 1085 (D.C. Cir. 2015)......................8, 9

*United States v. Deffenbaugh Indus., Inc.*, 957 F.2d 749 (10th Cir. 1992) ...2

*United States v. Dionisio*, 410 U.S. 1 (1973)..........................................20

*United States v. Doe Corp.*, 59 F.4th 301 (7th Cir. 2023)..........................18

*United States v. Gewin*, 759 F.3d 72 (D.C. Cir. 2014)..............................24

*United States v. Hillie*, 39 F.4th 674 (D.C. Cir. 2022)..............................16

*United States v. Mandujano*, 425 U.S. 564 (1976)..................................19

*United States v. McIlwain*, 931 F.3d 1176 (D.C. Cir. 2019)......................26

*United States v. R. Enters., Inc.*, 498 U.S. 292 (1991) ............................20

* *United States v. Seals*, 130 F.3d 451
(D.C. Cir. 1997) ............................................4, 6, 7, 12, 13, 15, 16, 17, 34

*United States v. Stewart*, 104 F.3d 1377 (D.C. Cir. 1997)...................28, 36

*United States v. Thompson*, 251 U.S. 407 (1920) ..................................15

*United States v. Vonn*, 535 U.S. 55 (2002)...............................................26

*United States v. Wider*, 951 F.2d 1283 (D.C. Cir. 1991)............................24

*United States v. Williams*, 553 U.S. 285 (2008) .......................................16

*Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457 (2001) ...........................19

**Other References**

18 U.S.C. § 922(g)(1) ........ 1, 2, 3, 4

18 U.S.C. § 3333 ........ 20, 21

28 U.S.C. § 1442 ........ 33

28 U.S.C. § 1455 ........ 33

28 U.S.C. § 2071 ........ 26

28 U.S.C. § 2072 ........ 26

28 U.S.C. § 2073 ........ 26

28 U.S.C. § 2074 ........ 26

D.C. Code § 1-309.10 ........ 25

D.C. Code § 11-1901 ........ 11, 23

D.C. Code § 11-1903(a) (1970) ........ 9, 11, 21-23

D.C. Code § 11-1906 ........ 11

D.C. Code § 11-1916(a) ........ 1, 3, 4, 6-8, 11-18, 21-26, 31-34, 36, 37

D.C. Code § 11-1917 ........ 12, 23

Fed. R. Crim. P. 1 ........ 28, 29, 30, 34, 35, 36

Fed. R. Crim. P. 1(a)(1) ........ 26, 32

Fed. R. Crim. P. 1(a)(4) ........ 33

Fed. R. Crim. P. 1(b)(2) ........ 30

Fed. R. Crim. P. 6 .......... 31, 32

Fed. R. Crim. P. 6(a)(1) .......... 31

Fed. R. Crim. P. 6(a)(1) (2001) .......... 30, 31

Fed. R. Crim. P. 54 .......... 28, 34

Fed. R. Crim. P. 54(c) (2001) .......... 29

Sup. Ct. R. Crim. P. 6 .......... 36, 37

U.S. Const. amend. V .......... 10

Alaska Stat. § 12.40.030 .......... 21

Ga. Code Ann. § 15-12-71 .......... 21

Pub. L. No. 91-358, 84 Stat. 480 (July 29, 1970) .......... 9

Pub. L. No. 99-650, 110 Stat. 3635, 3640 (Nov. 14, 1986) .......... 11

Black's Law Dictionary (4th ed. rev. 1968) .......... 9, 18

Webster's New Int'l Dictionary 520 (2d ed. 1961) .......... 18

## ISSUE PRESENTED

Whether a grand jury empaneled in D.C. Superior Court can return an indictment in the U.S. District Court for the District of Columbia, where Congress expressly authorized any grand jury in D.C. to return an indictment in federal district court or D.C. Superior Court, and subsequent amendments to the Federal Rules of Criminal Procedure did not implicitly repeal the statute granting that authority.

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 25-3115

UNITED STATES OF AMERICA, Appellee,

v.

KEVONTAE STEWART, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BRIEF FOR APPELLEE

## COUNTERSTATEMENT OF THE CASE

On September 29, 2025, a grand jury empaneled in D.C. Superior Court returned an indictment charging Kevontae Stewart with unlawful possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) (A18; A231). Pursuant to the authority that Congress granted to any "grand jury serving in the District of Columbia," D.C. Code § 11-1916(a), the indictment was returned in the U.S. District Court for the District of Columbia (A231). On October 9, 2025, the criminal-duty magistrate judge issued an order

concluding that the indictment was "facially invalid" and declining to accept it (A108). On November 20, 2025, after the government requested review of the magistrate judge's order (A120-36), the Hon. James E. Boasberg issued an order finding that the indictment was validly issued under authority expressly granted by Congress and directing the magistrate judge to accept its return (A180-95). Stewart noted a timely appeal (A202).[1]

## The Indictment Litigation

On September 18, 2025, Stewart was charged by complaint with unlawfully possessing a firearm after previously being convicted of a felony, in violation of 18 U.S.C. § 922(g)(1) (A10-15). The next day, Magistrate Judge Matthew Sharbaugh ordered Stewart detained after finding that no conditions of release would reasonably assure the safety

[1] We are unaware of any cases addressing whether the specific circumstances presented here satisfy the collateral-order exception to the final-order rule for appeals. For purposes of this case, however, we assume that the district court's order rejecting Stewart's challenge to the grand jury's authority to issue the indictment is an appealable order. *Cf. United States v. Deffenbaugh Indus., Inc.*, 957 F.2d 749, 754-55 (10th Cir. 1992) (permitting interlocutory review of denial of motion challenging whether a sufficient number of grand jurors voted to support the indictment); *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 802 (1989) (recognizing that interlocutory review would be permissible where a claim, if meritorious, would establish "a defect so fundamental that it causes the grand jury no longer to be a grand jury").

of the community (A20-23). A preliminary hearing was scheduled for the morning of September 30, 2025 (A3).

On Friday, September 26, 2025, a district court grand jury declined to return an indictment charging Stewart with a violation of § 922(g)(1) (A17-19). That afternoon, Magistrate Judge Sharbaugh ordered Stewart released from detention but declined, at that time, the government's request to reschedule the preliminary hearing set for September 30th (A4; A121; A218-19). The court instead scheduled a status hearing for Monday, September 29, 2025 (A4). Since no grand jury was scheduled to sit in the district court on September 29th — the only remaining court day before the preliminary hearing — the government notified the clerk's office and the chambers of Magistrate Judge Zia Faruqui (the criminal-duty magistrate judge) that it intended to present Stewart's case to a grand jury empaneled in D.C. Superior Court pursuant to D.C. Code § 11-1916(a) (A121-22). The government asked the court to prepare to receive an indictment on September 29th if one were returned (*id.*).

At the status hearing on September 29, 2025, Magistrate Judge Sharbaugh advised Stewart of his conditions of release and agreed to reschedule the preliminary hearing to October 9, 2025 (A223). Meanwhile,

before learning of this continuance, a government attorney presented Stewart's case to a Superior Court grand jury, which voted to return an indictment charging a violation of § 922(g)(1) (A122; A231). Government counsel thereafter appeared before Magistrate Judge Faruqui with the grand jury foreperson to return the indictment (A231). When the magistrate judge questioned the basis for accepting an indictment from a Superior Court grand jury, the government cited D.C. Code § 11-1916(a), *United States v. Seals*, 130 F.3d 451 (D.C. Cir. 1997), and other cases in which such indictments had been accepted (A231-32). Magistrate Judge Faruqui ordered briefing on the topic and appointed the Federal Public Defender's Office as Stewart's co-counsel with respect to this issue (A26).

On October 2, 2025, the government filed an emergency request for review before Judge Boasberg, the Chief Judge of the district court (A27-44). The government asserted that Congress had expressly empowered Superior Court grand juries to return indictments in the district court, and the validity of this practice was well-established (A33-36). At a hearing on October 3, 2025, Judge Boasberg ruled that the government's request was premature because the magistrate judge had not yet ruled

on the indictment's validity, and the government could seek review of any future adverse ruling (A254).[2]

On October 9, 2025, after further briefing by the parties (A85-107), Magistrate Judge Faruqui ruled that an indictment issued by a Superior Court grand jury was "facially invalid" under the Federal Rules of Criminal Procedure, and he therefore could not accept the indictment in this case (A108-19). On October 14, 2025, the government filed a request for review by Judge Boasberg (A120-36). Stewart filed a response (A137-68), and the government filed a reply (A169-79). Judge Boasberg heard oral argument on October 28, 2025 (A256-83).

On November 20, 2025, Judge Boasberg issued an order granting the government's motion and directing the criminal-duty magistrate judge to accept the indictment (A180). Consistent with this Court's interpretation of

[2] The government also argued that Magistrate Judge Faruqui's request for adversarial briefing before accepting the indictment was improper because the appropriate avenue for challenging an indictment was a motion to dismiss that would be resolved by a district court judge (A36-37). Since Judge Boasberg ultimately addressed and upheld the validity of the indictment in an order that is the subject of this appeal, the current posture is effectively the same as if the matter had been litigated through a motion to dismiss. It is thus unnecessary for this Court to address this procedural issue in order to resolve this appeal.

D.C. Code § 11-1916(a) in *Seals*, 130 F.3d at 459, Judge Boasberg concluded that, "[b]y its plain terms," the statute "permits local and federal grand juries in D.C. to return indictments in either court" (A187-91). Judge Boasberg further held that amendments to the Federal Rules of Criminal Procedure in 2002 showed no "clear and manifest" legislative intention to repeal § 1916(a) by implication (A191-95). Judge Boasberg found that the amendments on which Stewart relied were "best read as adding clarity without disturbing the status quo," and there was no evidence that Congress intended to "nullify" § 1916(a) by implementing "non-substantive, seemingly unrelated amendments" to the Federal Rules (A193-94).

## Summary of Argument

Congress, in enacting the original version of D.C. Code § 11-1916(a), expressly authorized any grand jury in the District of Columbia to return indictments in either federal district court or D.C. Superior Court. As this Court recognized in *United States v. Seals*, 130 F.3d 451 (D.C. Cir. 1997), "it is hardly surprising that the Congress should vest a grand jury empaneled by either court with authority to return an indictment in the other or that judicial supervisory authority should be shared by the courts" in light of "the limited pool of potential jurors available" to serve in the

district. *Id.* at 460. While indictments issued by the process authorized in § 1916(a) are unusual, such indictments have been used and accepted in both D.C. court systems for decades, and the validity of this process has been confirmed by both this Court and the D.C. Court of Appeals. Furthermore, even if this Court were not constrained by binding authority in interpreting § 1916(a), the statutory language plainly permits local and federal grand juries in D.C. to return indictments in either court. To the extent there is any ambiguity, Congress's purpose was made eminently clear when it recodified the provision in 1986 using identical language, with no attempt to disapprove of how the statute had been used in practice or interpreted by courts to that point, or otherwise to clarify its meaning.

Amendments to the Federal Rules of Criminal Procedure in 2002 did not implicitly repeal D.C. Code § 11-1916(a). First, there is no irreconcilable conflict between § 1916(a) and the Federal Rules because nothing in the Federal Rules expressly prohibits the indictment process authorized by § 1916(a). Although the Federal Rules govern proceedings in district courts, they do not purport to prohibit other Congressionally authorized methods by which criminal proceedings can be brought to federal court. In enacting § 1916(a), Congress expressly established a valid means for a criminal

proceeding to be brought to federal court in the unique federal enclave of D.C. Second, the 2002 amendments did not demonstrate a clear and manifest intention by Congress to repeal § 1916(a) by implication. There is nothing in the text of the amendments or the advisory committee notes to suggest that any changes were meant to alter the grand-jury powers that Congress authorized in § 1916(a). It is implausible that Congress decided to revoke D.C.'s unique shared grand-jury authority after decades of practice, which prompted published decisions in both this Court and the D.C. Court of Appeals, by adopting seemingly unrelated amendments to certain general definitions in the Federal Rules.

## ARGUMENT

### The Indictment in This Case Was Validly Issued Under Authority Expressly Granted by Congress.

#### A. Congress Authorized Grand Juries in D.C. to Return Indictments in Either Federal District Court or D.C. Superior Court.

##### 1. Standard of Review and Applicable Legal Principles

This Court reviews questions of statutory interpretation de novo. *See United States v. Cordova*, 806 F.3d 1085, 1098 (D.C. Cir. 2015). Statutory interpretation "always" "begin[s] with the text of the statute." *Id.* (cleaned

up). If the language is ambiguous, courts "look to the statutory purpose." *Id*. Courts "must avoid an interpretation that undermines congressional purpose considered as a whole when alternative interpretations consistent with the legislative purpose are available." *Id.*

### 2. Additional Background

Congress created the D.C. Superior Court and D.C. Court of Appeals in 1970 by enacting the District of Columbia Court Reform and Criminal Procedure Act. *See* Pub. L. No. 91-358, 84 Stat. 480 (July 29, 1970). In the same legislation, a provision then codified as D.C. Code § 11-1903(a) provided: "A grand jury serving in the District of Columbia may take cognizance of all matters brought before it regardless of whether an indictment is returnable in the Federal or District of Columbia courts." *Id.* at 515. At the time, Black's Law Dictionary defined "cognizance" to mean: "Jurisdiction, or the exercise of jurisdiction, or power to try and determine causes." *Cognizance*, Black's Law Dictionary (4th ed. rev. 1968).[3]

---

[3] Available at https://www.1215.org/lawnotes/dictionaries/1968_blacks_law_dictionary_4th_ed.pdf, PDF page 401 (last checked Aug. 14, 2026). The quoted language is the first definition. Other definitions relate to judicial functions, powers granted by a king, and actions by a defendant.

In 1972, the D.C. Court of Appeals addressed the constitutionality of this provision in *Atkinson v. United States*, 295 A.2d 899 (D.C. 1972). The defendant "attack[ed] the validity of [his] indictment," arguing that "the return of an indictment by a grand jury of the United States District Court to the Superior Court of the District of Columbia" was a violation of the Fifth Amendment's Grand Jury Clause.[4] *Id.* at 901. The D.C. Court of Appeals rejected this claim, concluding that "the United States District Court grand jury was expressly authorized by statute to return indictments to the Superior Court," and the grand-jury rules of both courts satisfied the Fifth Amendment's requirements. *Id.* at 901-02.

In 1978, the D.C. Court of Appeals rejected a defendant's claim that the statute "permit[ted] a grand jury only to 'take cognizance' of a matter ultimately proper before another court, but not to return an indictment with respect to such matters." *Hackney v. United States*, 389 A.2d 1336, 1339 (D.C. 1978). The court also rejected the argument that "since the transfer of all local criminal jurisdiction to Superior Court ha[d] been

---

[4] *See* U.S. Const. amend. V ("No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger[.]").

completed . . . there [was] no longer any need for using this indictment procedure." *Id*. The D.C. Court of Appeals observed that "[f]ederal courts as well as the District of Columbia courts were created by Congress," and it found that the statute reflected "a congressional decision to permit grand juries attached to either court to return indictments both for violations of a federal or local criminal statute." *Id.* at 1339-40 (cleaned up). *See also Christian v. United States*, 394 A.2d 1, 42-43 (D.C. 1978) (interpreting the statute to mean that "Superior Court grand juries were intended to have powers comparable to federal grand juries").

In 1986, Congress enacted the District of Columbia Jury System Act. *See* Pub. L. No. 99-650, 110 Stat. 3635, 3640 (Nov. 14, 1986). This legislation split apart the previously unified jury-selection systems for the D.C. District Court and Superior Court and set forth in a new D.C. Code provision the juror qualifications for the independent Superior Court system. *See* D.C. Code §§ 11-1901, -1906. The same legislation recodified § 1903(a) as D.C. Code § 11-1916(a) without any changes to its language. *See* D.C. Code § 11-1916(a) ("A grand jury serving in the District of Columbia may take cognizance of all matters brought before it regardless of whether an indictment is returnable in the Federal or District of

Columbia courts."). Congress also added a provision immediately after the newly codified § 1916, titled, "Coordination and cooperation of courts." D.C. Code § 11-1917. This new statute provided:

> To the extent feasible, the Superior Court and the United States District Court shall consider the respective needs of each court in the qualification, selection, and service of jurors. Nothing in this chapter shall be construed to prevent such courts from entering into any agreement for sharing resources and facilities (including automated data processing hardware and software, forms, postage, and other resources).

*Id.*

In 1997, this Court rejected a claim that an indictment by a D.C. Superior Court grand jury returned in federal court pursuant to § 1916(a) unconstitutionally "vest[ed] the judicial power of the United States outside Article III" and deprived the defendant "of the constitutional safeguards associated with Article III supervision of federally-indicting grand juries." *United States v. Seals*, 130 F.3d 451, 455-56 & n.3 (D.C. Cir. 1997). The district court, which this Court affirmed in relevant part, had held that "Congress, with plenary authority over the District of Columbia, validly authorized the D.C. Superior Court, an Article I tribunal, to supervise a grand jury that can indict for both D.C. and federal offenses." *Id.* at 453.

Favorably citing the D.C. Court of Appeals decisions in *Atkinson*, 295 A.2d at 901, and *Hackney*, 389 A.3d at 1340, this Court observed that

> [g]iven the limited pool of potential jurors available to serve both the D.C. Superior Court and the United States District Court, it is hardly surprising that the Congress should vest a grand jury empaneled by either court with authority to return an indictment in the other or that judicial supervisory authority should be shared by the courts.

*Seals*, 130 F.3d at 460.

This Court held that the shared grand-jury authority established in § 1916(a) was constitutionally sound because "the power to supervise a federally-competent grand jury cannot fairly be described as an essential attribute of the judicial power of the United States." *Seals*, 130 F.3d at 459 (cleaned up). This Court further reasoned that § 1916(a) "authorize[d] only a limited sharing of the supervisory power with an Article I court" because "[a]n Article III judge continues to preside at the defendant's trial and retains his authority to dismiss an indictment." *Id.* The Court readily acknowledged that "the grand jury arrangement in the District of Columbia may be unique" — as D.C. is a "unique federal enclave" in many respects — but that did not render it unconstitutional. *Id.* at 457-58, 460 (cleaned up).

While indictments issued through the process authorized in § 1916(a) are unusual — as the government acknowledged in the district court (A247)

— the cases described above show that such indictments have been used and accepted in both D.C. court systems for decades. *See also, e.g., United States v. Allen*, 729 F. Supp. 120, 122 (D.D.C. 1989) ("[A] Superior Court grand jury is authorized by Congress to return a federal indictment."); *United States v. Brown*, 2007 WL 2007513, at *4 (D.D.C. July 9, 2007) (discussing the overlapping grand-jury authority established in § 1916(a)). Indeed, in the district court proceedings, both the court and Stewart's counsel acknowledged that Superior Court grand juries, without objection or controversy, returned indictments in federal court in recent years during the COVID pandemic and a major snowstorm (A234, A252). This practice is not, however, restricted to civic emergencies, as demonstrated by the government's list of 10 different examples from 1995 to 2020 where district court cases proceeded based on indictments returned by Superior Court grand juries (A133, A173). As the government explained in correspondence with the district court in December 2020, the government "only use[s] D.C. Code § 11-1916(a), when we cannot present a matter to a federal grand

jury" (A177). That is precisely what occurred in this case based upon the timing of the originally scheduled preliminary hearing (A121-22, A235).[5]

### 3. D.C. Code § 11-1916(a) Authorized the Indictment in This Case.

As this Court held in *Seals* — a decision that Stewart does not even address — Congress in D.C. Code § 11-1916(a) "vest[ed] a grand jury empaneled by either [the D.C. Superior Court or D.C. District Court] with authority to return an indictment in the other," such that "judicial supervisory authority" is "shared by the[se] courts." 130 F.3d at 460. Although the district court characterized this aspect of *Seals* as "dicta" because the case involved a constitutional challenge (A188), interpreting § 1916(a) was "a necessary antecedent" for this Court's assessment of the

[5] Stewart does not raise, and has thus abandoned, arguments he asserted in the district court (A96) ascribing legal significance to the fact that the first grand jury to consider his case declined to return an indictment. *See Martin v. Federal Bureau of Investigation*, 145 F.4th 1345, 1352 (D.C. Cir. 2025) ("Arguments not raised in the opening brief to support a claim of error are generally forfeited absent explanation."). As Stewart later acknowledged (A167), the government is entitled to "present[ ] to one grand jury charges which a previous grand jury has ignored." *United States v. Thompson*, 251 U.S. 407, 414 (1920); *see also In re United States*, 441 F.3d 44, 63 (1st Cir. 2006) ("The longstanding federal rule is that resubmissions of an indictment after one grand jury refuses to indict are permissible, without court approval, even when the prosecutor presents no additional evidence to the second grand jury." (cleaned up)).

statute's constitutional validity and is thus properly viewed as part of *Seals*'s holding. *In re Grand Jury Investigation*, 916 F.3d 1047, 1053 (D.C. Cir. 2019). *See also United States v. Hillie*, 39 F.4th 674, 683 (D.C. Cir. 2022) (where statutory constructions are "necessary antecedents" to determining constitutional validity, they are "binding holdings"); *cf. United States v. Williams*, 553 U.S. 285, 293 (2008) (explaining that it is "impossible to determine" if a statute is constitutionally overbroad "without first knowing what the statute covers"). As the district court recognized, this Court in *Seals* "would not have upheld the local grand jury's indictment as constitutional if it had thought that such a grand jury lacked the ability to indict a defendant in federal court at all" (A188).

*Seals*, moreover, was not alone in its interpretation of § 1916(a). The statute has been read the same way by the D.C. Court of Appeals, *see Hackney*, 389 A.2d at 1339-40; *Christian*, 394 A.2d at 42-43; multiple district court judges who discussed it in written decisions, *see Allen*, 729 F. Supp. at 122; *Brown*, 2007 WL 2007513, at *4; and the many trial court judges who have accepted indictments issued under the process authorized by the statute (A133, A173, A177). Stewart has not identified a single court that has questioned this interpretation, let alone adopted a contrary one.

This includes the magistrate judge who declined to accept Stewart's indictment in this case after concluding, erroneously, that the Federal Rules of Criminal Procedure had "superseded" the power of a D.C. Superior Court grand jury under § 1916(a) to return an indictment in federal court (A115). In any event, even if *Seals* is not viewed by this Court as binding authority, the uniform interpretation afforded to this statute by every court that has addressed it is correct for the reasons that follow.

As the district court concluded, D.C. Code § 11-1916(a), "[b]y its plain terms," "permits local and federal grand juries in D.C. to return indictments in either court" (A188-89). The statute applies to any grand jury "serving in the District of Columbia," which includes grand juries convened by the D.C. District Court and the Superior Court. D.C. Code § 11-1916(a). It authorizes those grand juries to "take cognizance" of "all matters" brought before them, "regardless" of whether a resulting indictment "is returnable in the Federal or District of Columbia courts." *Id.*

It is a "fundamental principle of statutory construction (and, indeed, of language itself) that the meaning of a word cannot be determined in isolation, but must be drawn from the context in which it is used." *Deal v. United States,* 508 U.S. 129, 132 (1993). A grand jury, to carry out its legal

duties, "has broad authority to investigate potential wrongdoing and, if wrongdoing is discovered, to decide whether to return a criminal indictment." *United States v. Doe Corp.*, 59 F.4th 301, 304 (7th Cir. 2023). In a statute granting authority to grand juries, therefore, the word "cognizance" is most naturally afforded its primary meaning in legal contexts from the time of the statute's enactment. Here, that is: "Jurisdiction, or the exercise of jurisdiction, or power to try and determine causes." *Cognizance*, Black's Law Dictionary (4th ed. rev. 1968). Stewart's reliance (at 33) on a general-purpose dictionary does not lead to a different result, since its only definition for "cognizance" specific to legal contexts (such as the scope of a grand jury's authority) is substantively the same: "Jurisdiction, or the power given by law to hear and decide controversies." *Cognizance*, Webster's New Int'l Dictionary 520 (2d ed. 1961).

As Stewart acknowledges (at 33), a grand jury's two core functions are to investigate wrongdoing and return indictments, and § 1916(a) does not restrict its grant of authority to one or the other. As the district court found, "a statutory interpretation that hives off one of those two functions is unlikely absent specific words authorizing the grand jury only to investigate, probe, inquire, or take some similar action" (A190). This is

especially true given that the statute expressly references a grand jury's authority to return an indictment.[6]

In addition, there is no support for Stewart's assertion (at 34) that the statute "differentiates between *taking cognizance* and *returning an indictment*" (emphasis in original). Rather, the two concepts are clearly linked in the statutory text, with the most natural reading being that any D.C. grand jury can return an indictment "in the Federal or District of Columbia courts" for any of the "matters brought before it." Indeed, given

---

[6] Stewart's complaint that interpreting "take cognizance" to include returning an indictment amounts to finding an "elephant[ ] in [a] mousehole" (Br. 38 (quoting *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001))) is accordingly off base. Grand juries are ordinarily understood to have the power to indict; indeed, determining whether to indict is one of their primary purposes and the traditional source of their investigative power. *See United States v. Mandujano*, 425 U.S. 564, 571-72 (1976) (opin. of Burger, C.J.). So it would be surprising for Congress to permit a grand jury to investigate a matter but leave it powerless to return an indictment if it found evidence of criminal wrongdoing. That is particularly so given that it is considered an abuse of the grand jury for the prosecution to ask it to continue to investigate a matter after an indictment has been returned where the government does not anticipate adding new charges in a superseding indictment. *See, e.g., Beverly v. United States*, 468 F.2d 732, 743 (5th Cir. 1972) ("[I]t is improper to use the grand jury for the purpose of preparing an already pending indictment for trial[,]" and "a misuse of the grand jury to use it as a substitute for discovery[.]") (citations omitted). Severing a grand jury's investigative power from its authority to indict would undermine that principle.

the broad investigative authority historically granted to grand juries — *see, e.g., United States v. R. Enters., Inc.*, 498 U.S. 292, 297 (1991) (a grand jury may "investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not"); *United States v. Dionisio*, 410 U.S. 1, 15 (1973) (grand jurors "may act on tips, rumors, evidence offered by the prosecutor, or their own personal knowledge") — Congress had no apparent reason to enact a statute merely affirming a grand jury's ability to take "conscious recognition" (Br. at 33) of "all matters" during an investigation. Nor is it apparent why Congress would include such a generic grant of authority as part of its legislation creating a separate local court system for the District of Columbia.

Stewart (at 34-36) argues that the true purpose of the statute was to empower grand juries in D.C. to investigate and issue reports about noncriminal matters. He fails, however, to provide any support for this interpretation from either the statute's text or its legislative history. Instead, Stewart recounts various examples of other statutes that clearly and expressly establish such authority. Federal law, for example, permits a special grand jury to "submit to the court a report . . . concerning noncriminal misconduct, malfeasance, or misfeasance in office[.]" 18 U.S.C.

§ 3333. Georgia law authorizes a grand jury to "inspect" or "investigate" jails and other public buildings and "prepare reports or issue presentments based upon its inspections." Ga. Code Ann. § 15-12-71. Alaska law grants a grand jury "the power to investigate and make recommendations concerning the public welfare or safety." Alaska Stat. § 12.40.030. Stewart fails to explain why Congress, in purportedly seeking to achieve a similar purpose here, omitted any reference to "investigations," "inspections," or "reports" in § 1916(a). Nor does Stewart explain why Congress used the language "regardless of whether an indictment is returnable in the Federal or District of Columbia courts" as a particularly oblique and convoluted way of describing "noncriminal" matters. *Cf. Consumer Fed. of Am. v. United States Dep't of Health & Human Servs.*, 83 F.3d 1497, 1503 n.6 (D.C. Cir. 1996) (rejecting statutory reading where Congress "presumably would have drafted the statute differently" to achieve the proposed outcome).

Furthermore, to the extent there is any ambiguity in the statutory text (and we submit there is none), Congress's purpose was made eminently clear when it enacted the District of Columbia Jury System Act in 1986. By the time of this legislation, the D.C. Court of Appeals had addressed indictments brought under what was then codified as § 1903(a) multiple

times, interpreting the statute to permit grand juries empaneled by either the D.C. District Court or Superior Court to return indictments in the other court and affirming the practice's constitutional validity. *See Atkinson*, 295 A.2d at 901-02; *Hackney*, 389 A.2d at 1339-40.[7] Against the backdrop of those decisions, Congress recodified § 1903(a) as § 1916(a) using identical language, with no attempt to disapprove of how the statute had been used and interpreted or otherwise to clarify its meaning. Congress is presumed to adopt existing judicial interpretations of a statute when it re-enacts identical statutory language without change. *See Madley v. U.S. Parole Comm'n*, 278 F.3d 1306, 1309 (D.C. Cir. 2002) (citing *Lorillard v. Pons*, 434 U.S. 575, 580 (1978)). Stewart nevertheless argues (at 42) that "the 1986 legislation contains considerable evidence that Congress intended to

---

[7] These cases undermine Stewart's puzzling claim (at 43) that there was "no need" for Congress to expressly authorize D.C.'s unique grand-jury arrangement because the shared indictment authority would have been "obvious" prior to 1986 based on the two courts' common jury-selection system. Even with express Congressional authorization for overlapping grand-jury jurisdiction, the practice was challenged on constitutional and statutory grounds in *Atkinson* and *Hackney*. Stewart's argument (at 44-46) that each court's respective rules of criminal procedure already separately addressed grand-jury indictment procedures similarly fails to explain why Congress would not find it necessary (or at least prudent) to codify what all parties agree is an unusual process rooted in D.C.'s unique status.

separate the two D.C. jury systems, which would include excising any 'mutual indictment power' from § 11-1916(a)." While the first part of this assertion is correct, *see* D.C. Code § 11-1901 ("A jury selection system is hereby established for the Superior Court of the District of Columbia"), the second part is impossible to reconcile with Congress's decision to recodify § 1903(a) as § 1916(a) without comment or any change to its language.

Congress's addition of D.C. Code § 11-1917 (titled "Coordination and cooperation of courts") immediately after § 1916 further demonstrates that, despite splitting apart the local and federal jury-selection systems, Congress intended the D.C. court systems to remain uniquely intertwined. Stewart's argument (at 42-43) that this new provision somehow limited the overlap between the court systems is belied by its text. The statute requires the D.C. District Court and Superior Court to "consider the respective needs of each court in the qualification, selection, and service of jurors," and it makes clear that nothing in the legislation establishing separate jury-selection systems should be "construed to prevent such courts from entering into any agreement for sharing resources and facilities." D.C. Code § 11-1917. This ongoing coordination and cooperation between D.C.'s two court systems is

consistent with Congress's decision to preserve the practice of overlapping grand-jury authority despite separating the jury-selection systems.

In addition, this Court should reject Stewart's claim (at 49-50) that interpreting § 1916(a) the same way that it has been interpreted for more than 50 years would lead to "absurd results" that have yet to occur. Specifically, Stewart asserts (at 50) that the district court's reading of the statute would "permit[ ] a Superior Court grand jury to return an indictment in *any* federal district court in the country" (emphasis in original). Since Stewart did not raise this argument in the district court, this Court should either decline to address it, *see United States v. Wider*, 951 F.2d 1283, 1287 (D.C. Cir. 1991), or, at most, review it for plain error, *see United States v. Gewin*, 759 F.3d 72, 78-79 (D.C. Cir. 2014). In any event, Stewart identifies no error at all. As noted, statutory language must be interpreted in "the context in which it is used." *Deal,* 508 U.S. at 132. There is a longstanding tradition, stretching back to common law, of "grand juries charging only local crimes." *United States v. Cessa*, 856 F.3d 370, 372 (5th Cir. 2017). Indeed, the Fifth Circuit in *Cessa* raised (but did not ultimately resolve) the question of whether "the Constitution limits a grand jury to indicting only crimes occurring in the district where it is convened." *Id.* at

371. In this context, the district court did not err, let alone plainly err, in implicitly interpreting § 1916(a)'s reference to "the Federal" courts to mean only courts in the District of Columbia — rather than encompassing every federal court in the United States.[8] This is especially true given that we are unaware of any other litigant or court since the statute's enactment in 1970 interpreting it in the implausibly expansive manner that Stewart proposes.

Finally, to the extent that Stewart, in quoting certain excerpts from the district court's decision (at 8-9), appears to raise concerns about hypothetical abuses of the indictment process authorized by § 1916(a), those concerns should also be rejected. Neither Stewart nor the district court have identified any evidence of such purported abuses occurring. Furthermore, as the district court recognized (A195), concerns of this nature implicate Congress's decision to authorize the indictment process used in this case, not its legality, and the Supreme Court has cautioned

---

[8] We note that D.C. Code § 1-309.10 uses similar language in stating that D.C. Advisory Neighborhood Commissions "shall not have the power to initiate a legal action in the courts of the District of Columbia or in the federal courts." It is unlikely that this statute was concerned about the possibility of D.C. Advisory Neighborhood Commissions initiating legal proceedings in federal courts elsewhere in the country.

against courts sitting as "superlegislatures" that second-guess these types of legislative policy choices. *Ewing v. California*, 538 U.S. 11, 28 (2003).

### B. Amendments to the Federal Rules of Criminal Procedure in 2002 Did Not Implicitly Repeal D.C. Code § 11-1916(a).

#### 1. Standard of Review and Applicable Legal Principles

This Court reviews the meaning of the Federal Rules of Criminal Procedure de novo. *See United States v. McIlwain*, 931 F.3d 1176, 1181 (D.C. Cir. 2019). These rules govern procedures in all criminal proceedings in federal courts. *See* Fed. R. Crim. P. 1(a)(1). The Supreme Court has the authority to prescribe such rules and present them to Congress for examination. *See Deaver v. Seymour*, 822 F.2d 66, 70 n.9 (D.C. Cir. 1987); 28 U.S.C. §§ 2071-74. The proposed rules take effect unless Congress takes action to delay, amend, or invalidate them. *See id.* "Once put into effect, the Federal Rules have the force of law." *Id.* Although they are not legally determinative, the Advisory Committee Notes for the Federal Rules "provide a reliable source of insight into the meaning of a rule, especially when . . . the rule was enacted precisely as the Advisory Committee proposed." *United States v. Vonn*, 535 U.S. 55, 64 n.6 (2002).

A "cardinal rule" of statutory interpretation is "that repeals by implication are not favored." *Cook County v. United States ex rel. Chandler*, 538 U.S. 119, 132 (2003) (cleaned up). This is because there is a "strong presumption" that "Congress will specifically address preexisting law when it wishes to suspend its normal operations in a later statute." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 510 (2018) (cleaned up). Accordingly, when "presented with two statutes, the Court will regard each as effective — unless Congress' intention to repeal is clear and manifest, or the two laws are irreconcilable." *Maine Cmty. Health Options v. United States*, 590 U.S. 296, 315 (2020) (cleaned up). "A party seeking to suggest that two statutes cannot be harmonized, and that one displaces the other, bears the heavy burden of showing a clearly expressed congressional intention that such a result should follow." *Epic Sys. Corp.*, 584 U.S. at 510 (cleaned up).

The Supreme Court has also instructed that "[w]here there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one." *Morton v. Mancari*, 417 U.S. 535, 550-51 (1974). This doctrine derives from the presumption that "when Congress has focused on a particular subject, a court can reasonably rely on that expression of congressional intent, by contrast with a generally worded statute where it

is unclear whether Congress focused on the particular matter at issue." *United States v. Stewart*, 104 F.3d 1377, 1387 (D.C. Cir. 1997).

### 2. Additional Background

Prior to 2002, Rule 1 of the Federal Rules of Criminal Procedure contained only the following short statement:

> These rules govern the procedure in all criminal proceedings in the courts of the United States, as provided in Rule 54(a); and, whenever specifically provided in one of the rules, to preliminary, supplementary, and special proceedings before United States magistrate judges and at proceedings before state and local judicial officers.

Fed. R. Crim. P. 1 (2001). In 2002, "Rule 1 [was] entirely revised and expanded to incorporate Rule 54, which deal[t] with the application of the rules." Fed. R. Crim. P. 1 advisory committee's note (2002 amend.). Thus, "as part of a general restyling of the Criminal Rules," the entirety of former Rule 54 was either "deleted as unnecessary" or "moved to revised Rule 1." Fed. R. Crim. P. 54 advisory committee's note (2002 amend.). The purpose of this change was to relocate Rule 54's description of "the scope of the rules" to "the beginning to show readers which proceedings are governed by these rules." *Id.* The revised Rule 1 also "incorporate[d] the definitions" previously set forth in Rule 54. *Id.*

The 2002 amendments to Rule 1 also included certain changes to the terminology and definitions that had appeared in the former Rule 54. Fed. R. Crim. P. 1 advisory committee's note (2002 amend.). In general, these changes were made to conform the rules to current practice. *See id.* "Anachronistic," "superfluous," and "possibly misleading" definitions were deleted. *Id.* The definition of "magistrate judge" was revised to reflect "the wider and almost exclusive use of United States magistrate judges . . . in preliminary matters." *Id.* The terms "Act of Congress" and "Judge of the United States" were replaced with the terms "federal statute" and "federal judge," respectively. *Id.*

Before 2002, the term "Judge of the United States" included only "a judge of a district court, court of appeals, or the Supreme Court." Fed. R. Crim. P. 54(c) (2001). The replacement term, "federal judge," was expanded to include "magistrate judges" and "federal judges other than Article III judges who may be authorized by statute to perform a particular act specified in the Rules of Criminal Procedure." Fed. R. Crim. P. 1 advisory committee's note (2002 amend.). The advisory committee notes clarified

that this expanded definition, like the old definition for "Judge of the United States," "[did] not include local judges in the District of Columbia." *Id.*[9]

The revised Rule 1 also added a definition for the term "court," which was defined as "a federal judge performing functions authorized by law." Fed. R. Crim. P. 1(b)(2). The advisory committee notes explained that this change, like several others described above, was prompted by the increased role of magistrate judges in federal criminal proceedings. In the pre-2002 rules, the term "court" "was almost always synonymous with the term 'district judge.'" Fed. R. Crim. P. 1 advisory committee's note (2002 amend.). The newly added definition for "court," combined with the expanded definition for "federal judge," "continue[d] the traditional view that 'court' means district judge, but also reflect[ed] the current understanding that magistrate judges act as the 'court' in many proceedings." *Id.*

The 2002 amendments also included a "general restyling" of Rule 6, the rule specifically addressed to grand juries. Rule 6(a)(1) previously read:

> The court shall order one or more grand juries to be summoned at such time as the public interest requires. The grand jury shall consist of not less than 16 nor more than 23 members.

---

[9] Stewart (at 27) appears to suggest that this note described a "specific change" to the Federal Rules. In fact, as explained, it merely clarified that this aspect of the prior definition had not been changed.

> The court shall direct that a sufficient number of legally qualified persons be summoned to meet this requirement.

Fed. R. Crim. P. 6(a)(1) (2001). After the 2002 amendments, it read:

> When the public interest so requires, the court must order that one or more grand juries be summoned. A grand jury must have 16 to 23 members, and the court must order that enough legally qualified persons be summoned to meet this requirement.

Fed. R. Crim. P. 6(a)(1). The advisory committee notes make clear that the changes to this provision were "intended to be stylistic." Fed. R. Crim. P. 6 advisory committee's note (2002 amend.).

#### 3. D.C. Code § 11-1916(a) Does Not Irreconcilably Conflict with the Federal Rules, and Congress Did Not Demonstrate a Clear and Manifest Intention to Repeal the Statute.

Stewart's claim (at 10-30) that amendments to the Federal Rules of Criminal Procedure eliminated the authority of D.C. Superior Court grand juries to return indictments in federal district court should be rejected. Stewart has failed to satisfy his "heavy burden" of showing that D.C. Code § 11-1916(a) and the Federal Rules cannot be harmonized, and that Congress showed a "clear and manifest" intention to nullify § 1916(a) by accepting the 2002 amendments to the Federal Rules. *Epic Sys. Corp.*, 584 U.S. at 510; *Maine Cmty. Health Options*, 590 U.S. at 315.

First, there is no irreconcilable conflict between § 1916(a) and the Federal Rules. As the district court observed, the federal rule governing grand juries, Fed. R. Crim. P. 6, is "not restrictive" (A128). Rather, "the rule states what [the district court] must do, not what the Superior Court cannot do" (*id.*). Stewart's insistence (at 9) that "the Federal Rules do not permit a district court to accept an indictment returned by a grand jury summoned by the D.C. Superior Court" has no basis in either the text or legislative history of the Federal Rules. Nothing in Rule 6, or elsewhere in the Federal Rules, expressly prohibits the indictment process authorized by § 1916(a). Courts do not "usually read into statutes words that aren't there," *Romag Fasteners, Inc. v. Fossil, Inc.*, 590 U.S. 212, 215 (2020), and they certainly should not add words that would create an unnecessary conflict with another statute.

Indeed, although the Federal Rules state that they govern proceedings "in the United States district courts," Fed. R. Crim. P. 1(a)(1), they do not purport to prohibit other Congressionally authorized methods by which criminal proceedings can be brought to federal court. To the contrary, the Federal Rules acknowledge the existence of such processes by noting, for example, that the rules "govern all proceedings *after* removal

from a state court." Fed. R. Crim. P. 1(a)(4) (emphasis added). The procedure for removing criminal prosecutions from state court to federal court, like the indictment process in § 1916(a), is not otherwise addressed or described in the Federal Rules but is instead governed by two statutes enacted by Congress: 28 U.S.C. §§ 1442 and 1455. *See, e.g., Georgia v. Heinze*, 171 F.4th 1335, 1337-38 (11th Cir. 2026) (describing removal of case to federal court after defendants were "indicted by a state grand jury").

Absent a constitutional limitation, it is up to Congress to decide how federal offenses may be charged and prosecuted in federal courts. *See Palmore v. United States*, 411 U.S. 389, 401 (1973). At oral argument in the district court, Stewart's counsel acknowledged as much, agreeing that Congress had "the power" to "pass[ ] a law that said . . . any indictment returned by a properly constituted grand jury in the D.C. [S]uperior [C]ourt may be returned in a federal district court of the District of Columbia" (A275). In enacting D.C. Code § 11-1916(a), Congress established just such an alternate means by which a criminal proceeding can be brought to federal court in the unique federal enclave of D.C. Like the removal of state criminal proceedings, *see Tennessee v. Davis*, 100 U.S. 257 (1879), the indictment process established by

§ 1916(a) has been upheld as constitutionally sound, *see Seals*, 130 F.3d at 457-60; *Atkinson*, 295 A.2d at 901-02 (noting that the grand-jury rules of both the federal district court and D.C. Superior Court satisfied the Fifth Amendment's requirements). Although Stewart (at 40-44) notes that there have been minor changes to the D.C. Superior Court's grand-jury selection rules since *Seals* and *Atkinson*, he does contend that any such changes give rise to constitutional concerns. Nor has Stewart ever challenged any aspect of his indictment in this case on constitutional grounds.

Second, the 2002 amendments to the Federal Rules did not demonstrate a clear and manifest intention by Congress to repeal § 1916(a) by implication. As discussed, the advisory committee notes to Rule 1 explained that this rule was "entirely revised" by combining it with Rule 54 in order to foreground the scope of the rules and key definitions. *See* Fed. R. Crim. P. 1 advisory committee's note (2002 amend.). To the extent that certain terms and definitions were modernized and updated, the purpose was to conform the Federal Rules to current practice. *See id*. Indeed, the impetus identified for the specific amendments on which Stewart relies — the expanded definition of "federal judge" and a newly added definition for

"court" — was to recognize the increased role of magistrate judges in modern federal criminal proceedings. *See id.*

Stewart's focus (at 24-27) on whether the revamp of Rule 1 can be described as "stylistic" misses the more fundamental point, which, as the district court recognized, is that "there is nothing to suggest the 2002 amendments . . . were intended to address the unique role that grand juries in the District of Columbia have to consider federal and local criminal charges" (A128). D.C.'s shared grand-jury authority was established by Congress through a specific statutory provision in 1970 — a provision that was preserved and recodified with identical language when Congress established an independent D.C. jury-selection system in 1986. The Federal Rules, by contrast, have general application to all federal courts in the country, and Rule 1 sets forth definitions that generally apply throughout those rules. It is implausible that Congress decided to revoke D.C.'s unique shared grand-jury arrangement after decades of practice, which prompted published decisions in both this Court and the D.C. Court of Appeals, by adopting seemingly unrelated amendments to certain general definitions in the Federal Rules. In short, Stewart has failed to show that Congress "focused on the particular matter at issue" when it accepted the 2002

amendments to Rule 1. *Stewart*, 104 F.3d at 387. This is particularly true given the absence of any relevant substantive changes to Rule 6, the only rule that specifically addresses grand juries, and the complete absence of any reference to D.C. Superior Court grand juries in the text of the amended rules or the advisory notes. “It is difficult to imagine that any member of Congress . . . would consider that he was voting for the repeal” of § 1916(a) by not objecting to the proposed Federal Rules amendments at issue. *Demby v. Schweiker*, 671 F.2d 507, 512 (D.C. Cir. 1981).

Finally, Stewart’s reliance (at 28-30) on 2015-16 amendments to the Superior Court Rules of Criminal Procedure is unavailing. As Stewart acknowledges (at 29), the purpose of these amendments was “to conform to the general restyling of the federal rules in 2002.” D.C. Sup. Ct. R. Crim. P. 6 comment (2016). Like the Federal Rules that they mimic, the language of the relevant Superior Court Rules is not restrictive. The rules set forth procedures for grand juries and indictments in the Superior Court but do not purport to limit what a federal district court grand jury can do. It is therefore unclear, as the district court observed, whether the removal of a comment that previously “recognize[d] that a grand jury summoned by the Superior Court may return indictments in either the

Superior Court or the United States District Court," D.C. Sup. Ct. R. Crim. P. 6 comment (2015) (removed 2016), was "for purely stylistic reasons or to reflect [the Rules Committee's] altered understanding of the local grand jury's authority" (A194-95). Regardless of the answer, as the district also recognized, the D.C. Superior Court Rules Committee's interpretation of amendments to the Federal Rules of Criminal Procedure cannot "overcome a federal statutory provision" (A195). In § 1916(a), Congress empowered any grand jury in the District of Columbia to return indictments in either federal district court or D.C. Superior Court. That authority has been upheld by both this Court and the D.C. Court of Appeals, and it remains intact in the absence of any express or implied repeal by Congress itself.

## CONCLUSION

WHEREFORE, the government respectfully submits that the judgment of the district court should be affirmed.

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

CHRISELLEN R. KOLB
NICHOLAS P. COLEMAN
CAELAINN CARNEY
Assistant United States Attorneys

/s/
TIMOTHY R. CAHILL
D.C. Bar #1032630
Assistant United States Attorney
601 D Street, NW, Room 6.232
Washington, D.C. 20530
Timothy.Cahill@usdoj.gov
(202) 252-6829

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

I HEREBY CERTIFY pursuant to Fed. R. App. P. 32(g) that this brief contains 8,027 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and D.C. Circuit Rule 32(e)(1), and therefore complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B). This brief has been prepared in 14-point Century Schoolbook, a proportionally spaced typeface.

/s/
TIMOTHY R. CAHILL
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have caused a copy of the foregoing Brief for Appellee to be served by electronic means, through the Court's CM/ECF system, upon counsel for appellant, Matthew Farley, Esq., Matthew_Farley@fd.org, Assistant Federal Public Defender, on this 14th day of August 2026.

/s/
TIMOTHY R. CAHILL
Assistant United States Attorney