ORAL ARGUMENT NOT YET SCHEDULED

**UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

**No. 25-3115**

---

**UNITED STATES OF AMERICA,**
*Plaintiff-Appellee,*

**v.**

**KEVONTAE STEWART,**
*Defendant-Appellant.*

---

**APPEAL FROM THE UNITED STATES**
**DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

# REPLY BRIEF FOR APPELLANT

---

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

MATTHEW L. FARLEY
Asst. Federal Public Defender
625 Indiana Avenue, NW
Suite 550
Washington, DC 20004
(202) 208-7500
Matthew_Farley@fd.org

District Court
Cr. No. 25-MJ-00225 (ZMF)

# TABLE OF CONTENTS

TABLE OF CONTENTS ........ i

TABLE OF AUTHORITIES ........ ii

INTRODUCTION ........ 1

ARGUMENT ........ 2

I. THE FEDERAL RULES OF CRIMINAL PROCEDURE REQUIRE A FELONY INDICTMENT TO ORIGINATE FROM A FEDERAL GRAND JURY ........ 2

II. SECTION 11-1916 DOES NOT AUTHORIZE A SUPERIOR COURT GRAND JURY TO RETURN AN INDICTMENT IN FEDERAL COURT ........ 13

A. No Court has Interpreted § 11-1916(a) ........ 13

B. The Government's Interpretation of § 11-1916(a) is Wrong ........ 20

C. The Government's Reading of § 11-1916(a) Would Permit Absurd Results ........ 29

CONCLUSION ........ 34

CERTIFICATE OF COMPLIANCE ........ 35

# TABLE OF AUTHORITIES

## CASES

*Atkinson v. United States*,
295 A.2d 899 (D.C. 1972) .......... 18, 27

*Benitez v. Charlotte-Mecklenburg Hosp. Auth.*,
992 F.3d 229 (4th Cir. 2021) .......... 16

*Christian v. United States*,
394 A.2d 1 (D.C. 1978) .......... 18-20

*Georgia v. Heinze*,
171 F.4th 1335 (11th Cir. 2026) .......... 5

*Hackney v. United States*,
389 A.2d 1336 (D.C. 1978) .......... 18, 27

*Harper v. Va. Dep't of Tax'n*,
509 U.S. 86 (1993) .......... 16

*In re Grand Jury Investigation*,
916 F.3d 1047 (D.C. Cir. 2019) .......... 15

*Judge Rotenberg Educ. Ctr., Inc. v. USFDA*,
3 F.4th 390 (D.C. Cir. 2021) .......... 23

*Landstar Exp. Am., Inc. v. Fed. Maritime Comm'n*,
569 F.3d 493 (D.C. Cir. 2009) .......... 30

*Maine Comty. Health Options v. United States*,
590 U.S. 296 (2020) .......... 3

*Mova Pharm. Corp. v. Shalala*,
140 F.3d 1060 (D.C. Cir. 1998) .......... 30-31, 33

*United States v. Allen*,
729 F. Supp. 120 (D.D.C. 1989) .......... 17

*United States v. Brown*,
2007 WL 2007513 (D.D.C. July 9, 2007) .......... 17

*United States v. Hillie*,
39 F.4th 674 (D.C. Cir. 2022) .......... 16

*United States v. Koan*,
2026 WL 2969096, --- F.4th ---- (5th Cir. Oct. 2, 2026) .......... 30

*United States v. L.A. Tucker Trucking Lines, Inc.*,
344 U.S. 33 (1952) .......... 17

*United States v. Nixon*,
483 U.S. 683 (1974) .......... 14

*United States v. Seals*,
130 F.3d 451 (D.C. Cir. 1997) .......... 14, 16-17

*United States v. Tynen*,
78 U.S. 88 (1870) .......... 8

*United States v. Wallace & Tiernan, Inc.*,
349 F.2d 222 (D.C. Cir. 1965) .......... 7

*Watson v. Philip Morris Cos.*
551 U.S. 142 (2007) .......... 5

*Webster v. Fall*,
266 U.S. 507 (1925) .......... 17

**FEDERAL STATUTES, RULES & REGULATIONS**

18 U.S.C. § 3333 .......... 24

Fed. R. Crim. P. 1 .......... 2, 4-8, 10-11

Fed. R. Crim. P. 6 .......... 2, 4, 8, 11, 25

Fed. R. Crim. P. 54 (2000) .......... 8-10

**D.C. PROVISIONS**

D.C. Code § 1-309.10 .......... 32

D.C. Code § 11-1901 .......... 28

D.C. Code § 11-1902 (1970) .......... 28

D.C. Code § 11-1903 (1970) .......... 18, 20

D.C. Code § 11-1916(a) .......... 1-3, 8, 12-14, 16-25, 26, 29, 31-33

D.C. Code § 11-1917 .......... 28-29

Super. Ct. R. Crim. P. 6 (2016) .......... 12

**OTHER AUTHORITIES**

Antonin Scalia & Bryan A. Garner,
*Reading Law: The Interpretation of Legal Texts* (2012) .......... 3-4

## INTRODUCTION

The United States Attorney's Office for the District of Columbia presented its case against Mr. Stewart to a grand jury summoned by the Chief Judge of the district court. That jury returned a no-true bill of indictment which should have been the end of the story. Instead, the government crossed C Street Northwest to present its federal case on federal charges to a grand jury summoned by the Superior Court of the District of Columbia. The Superior Court grand jury voted to indict Mr. Stewart and the government crossed the street again to return the indictment in this court. The magistrate court refused to accept the indictment, finding that it did not comply with the Federal Rules of Criminal Procedure. The district court, however, ordered the magistrate court to accept the indictment, finding that it was required to do so under D.C. Code § 11-1916(a). That order has been stayed pending this appeal.

The government agrees with the district court, arguing that the Federal Rules of Criminal Procedure do not require criminal cases to be initiated by a federal grand jury and that § 11-1916(a) permits the United States Attorney's Office to forgo the federal grand jury altogether. The

government is wrong on both accounts, and this Court should reverse and remand with instructions to dismiss the indictment.

## ARGUMENT

### I. THE FEDERAL RULES OF CRIMINAL PROCEDURE REQUIRE A FELONY INDICTMENT TO ORIGINATE FROM A FEDERAL GRAND JURY

The Court's analysis could begin and end with the Federal Rules of Criminal Procedure. The requirements of the Rules are plain. Rule 1 states that the Rules govern all criminal proceedings in all federal district courts. Rule 6 requires that all federal felony cases be initiated by an indictment returned by a grand jury summoned by "the court." And Rule 1 defines "the court" to exclude judges of the District of Columbia. To the extent these requirements conflict with D.C. Code § 11-1916(a) (and Mr. Stewart maintains that there is no conflict, *see infra* Pt. II), the Federal Rules control because they were enacted later in time.

Mr. Stewart has shown time and again that the Federal Rules displaced § 11-1916(a) to the extent it permits the Superior Court grand

jury to return federal indictments in federal court. OB10-30.[1] The government asserts that Mr. Stewart must meet some "heavy burden of showing a clearly expressed congressional intention that" Congress specifically intended for the Federal Rules of Criminal Procedure to supersede § 11-1916(a). GB27 (quoting *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 510 (2018) (cleaned up)). But this claim ignores that there are two paths for a litigant to show that Congress has implicitly repealed an earlier-in-time statute. First, as the government acknowledges, a litigant may show that Congress's "intention to repeal is 'clear and manifest.'" *Maine Comty. Health Options v. United States*, 590 U.S. 296, 315 (2020) (quoting *Morton v. Mancari*, 417 U.S. 535, 549 (1974)). Second, the litigant may show that "the two laws are 'irreconcilable.'" *Id.* A showing that the two laws are irreconcilable, therefore, does not require any showing of Congress's intent. *Contra* GB31. "When a statute specifically permits what an earlier statute prohibited, or prohibits what it permitted, the earlier statute is (no doubt about it) implicitly repealed."

[1] Citations to OB## are to Mr. Stewart's Opening Brief. Citations to GB## are to the Government's Response Brief. Citations to A### are to the Appendix to Mr. Stewart's Opening Brief.

Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* 327 (2012). Mr. Stewart succeeds under either test.

The text of Rules 1 and 6 plainly require that all federal felony prosecutions begin with an indictment from a federal grand jury. The government insists that "[n]othing in Rule 6, or elsewhere in the Federal Rules, expressly prohibits the indictment process authorized by § [11-]1916(a)." GB32. But Rule 1 explicitly provides that the Rules "govern the procedure in *all criminal proceedings* in the United States district courts." Fed. R. Crim. P. 1(a)(1) (emphasis added). The Fifth Amendment of the Constitution requires that all felony prosecutions proceed by indictment of a grand jury and Rules 6 and 1 require that all felony prosecutions begin with an indictment from a federal grand jury. *See* Fed. R. Crim. P. 1, 6. These rules are all that is needed to "prohibit[] the indictment process," (supposedly) "authorized by § [11-]1916(a)." GB32.

The Federal Rules concerning criminal prosecutions removed from state courts have no effect on Rule 1's requirement that the Rules govern all criminal prosecutions in the district courts. *Contra* GB32-33.

According to the government, because certain criminal prosecutions can be removed from state court to federal court post-indictment, the Rules do not actually require all criminal prosecutions to begin with an indictment returned by a federal grand jury. But this ignores that those state-initiated prosecutions are for violations of *state* statutes—not for violation of the United States Code like the indictment in this case. *See Watson v. Philip Morris Cos.*, 551 U.S. 142, 150 (2007) ("[T]he removal statute's 'basic' purpose is to protect the Federal Government from the interference with its 'operations' that would ensue were a State able, for example, to 'arres[t]' and bring 'to trial in a State cour[t] for an alleged offense *against the law of the State* …." (alterations in original) (emphasis added)); *see Georgia v. Heinze*, 171 F.4th 1335 (11th Cir. 2026) (criminal prosecution of federal officers for violation of Georgia criminal statutes proceeding in federal court). Cases removed from state court, therefore, have no relevance to this case.

Moreover, the plain language of Rule 1(a)(4) exempts removal cases from the general requirement that all federal prosecutions begin with a federal grand jury. *See* Fed. R. Crim. P. 1(a)(4) ("these rules govern all

proceedings after removal from a state court"). The Rules state that they apply to these removed proceedings only *after* removal from state court—*i.e. after* the cases have already been indicted by a state grand jury. *See*, *e.g.*, *Georgia v. Heinze*, Case No. 22-CR-388, ECF No. 1 (N.D. Ga. Oct. 25, 2022) (Indictment from Fulton County Superior Court). This is an explicitly written exception to the federal indictment requirement for these cases. Rule 1(a)(4), therefore, has no effect on the general rule that federal felony criminal prosecutions for violations of federal criminal law must begin with an indictment by a federal grand jury. Of course, there is no exception like that in Rule 1(a)(4) for cases indicted on federal charges by a grand jury of the D.C. Superior Court.

The Rules explicitly list all of the situations where they do not apply and that list does not include prosecutions in the District of Columbia. Under Rule 1(a)(5), the Federal Rules of Criminal Procedure do not apply to "the extradition and rendition of a fugitive"; "a civil property forfeiture for violating a federal statute"; "the collection of a fine or penalty"; "a proceeding under a statute governing juvenile delinquency…"; "a dispute between seamen under 22 U.S.C. §§ 256-258"; and "a proceeding against

a witness in a foreign country." Fed. R. Crim. P. 1(a)(5). Notably absent from this list of exemptions to the Federal Rules of Criminal Procedure are criminal prosecutions in the United States District Court for the District of Columbia because it is well settled that the Federal Rules apply to criminal prosecutions in this courthouse. *See United States v. Wallace & Tiernan, Inc.*, 349 F.2d 222, 225 (D.C. Cir. 1965) ("[T]here is no doubt that [Rule 6], like other Federal Rules, applies with equal force in the District Court for the District of Columbia.").[2]

It may be true that the Federal Rules of Criminal Procedure do not control what a Superior Court grand jury does in its courtroom, *see* GB32, but it cannot be seriously contested that the Federal Rules of Criminal Procedure and other federal laws control the validity of an indictment returned in federal court. The district court even held below that magistrate judges have an obligation to review indictments for

---

[2] In its opposition the government asserts that "[a]t oral argument in the district court, Stewart's counsel … agree[d] that Congress had 'the power' to 'pass[] a law that said …. any indictment returned by a properly constituted grand jury in the D.C. [S]uperior [C]ourt may be returned in a federal district court of the District of Columbia.'" GB33 (quoting A275). A review of the transcript shows that undersigned counsel said no such thing. *See* A275.

compliance with the Federal Rules before accepting them. *See* A184. The government has not made any showing that the combined requirement of Federal Rules 1 and 6 that every single criminal case initiated in the federal district courts be initiated via a federal grand jury does not apply in this case. Nor could it. Rules 1 and 6, then, irreconcilably conflict with the government's interpretation of § 11-1916(a). The Federal Rules, enacted later in time, control. *See United States v. Tynen*, 78 U.S. 88, 92 (1870).

Even if the Court requires Mr. Stewart to show a "manifest" intent by Congress to displace § 11-1916(a), he has met that burden. Mr. Stewart maintains that it is not necessary to review the Advisory Committee Notes to Rules 1 and 6 because the text of Rules 1 and 6 is plain. OB21-23. But if the Court finds it necessary to look for a "clear and manifest" intention of Congress to exclude Superior Court judges from the Rules, it need look no further than the 2002 Advisory Committee Notes which indicate that Rule 1 was "entirely revised" and explicitly noted the exclusion of Superior Court judges from the definition of "Federal Judge," and therefore "Court." OB26-27.

The now-rescinded Rule 54 of the Federal Rules of Criminal Procedure shows that Congress intended to remove Superior Court judges from the ambit of the Federal Rules in 2002. The government insists that Rule 1 was "entirely revised" only to include the definitions and terms of the now-extinct Rule 54. GB28. Not so—these definitions and terms were not adopted without change. Pre-2002 Rule 54 explicitly *in*cluded the judges of the District of Columbia into its definitions of "Federal magistrate judge," and "magistrate judge." Fed. R. Crim. P. 54(c) (2000). Rule 54 defined "Federal magistrate judge" to include "a United States magistrate judge as defined in 28 U.S.C. §§ 631-639, a judge of the United States or another judge or judicial officer specifically empowered by statute in force in any territory or possession, the Commonwealth of Puerto Rico, *or the District of Columbia*, to perform a function to which a particular rule relates." *Id.* (emphasis added). Rule 54 similarly defined "Magistrate judge" to include "a United States magistrate judge as defined in 28 U.S.C. §§ 631-639, a judge of the United States, another judge or judicial officer specifically empowered by statute in force in any territory or possession, the Commonwealth of Puerto Rico,

*or the District of Columbia*, to perform a function to which a particular rule relates, and a state or local judicial officer, authorized by 18 U.S.C. § 3041 to perform the functions prescribed in Rules 3, 4, and 5." *Id.* (emphasis added). But, as discussed at length in Mr. Stewart's opening brief, Rule 1 as of 2002 specifically *ex*cludes judicial officers from the local courts of the District of Columbia. OB10-30.

The Advisory Committee Notes to the 2002 Amendment even acknowledge that the 2002 Rule 1 did not "incorporate the definitions found in rule 54(c)" whole cloth. The Notes state that "Rule 1(b) is composed of material currently located in Rule 54(c), *with several exceptions*." Fed. R. Crim. P. 1 Committee Notes on Rules—2002 Amendment (emphasis added). And the exclusion of the judges of the D.C. Superior Court from the term "Federal judge" was the sixth of the nine explicit "exceptions" to the definitions of terms moved from Rule 54 to Rule 1. How much clearer could Congress have been?

The same is true of the government's argument that the so-called "general" Federal Rules of Criminal Procedure should not control the so-called "specific" § 11-1916(a). As the government acknowledges, GB27,

the general rule is that a general statute does not control a specific one "[w]here there is no clear intention otherwise." GB27-28 (quoting *Morton*, 417 U.S. at 550-51). According to the government's own cited authority, a showing of Congress's "intention otherwise" can be made by showing that Congress "has focused on [the] particular subject at issue." GB28 (quoting *United States v. Stewart*, 104 F.3d 1377, 1387 (D.C. Cir. 1997)). Here, it is clear from the revisions and Advisory Committee Notes from the pre-2002 Rule 54 to the 2002 Rule 1 that Congress explicitly "focused" on the "particular subject" of whether D.C. Superior Court judges should continue to be included in the Federal Rules of Criminal Procedure. It is equally clear that Congress decided that the answer to that question was no.

And even if, as the government claims, Congress's intention of the 2002 amendments to the Federal Rules was merely to "conform the rules to current practice," GB29 (citing Fed. R. Crim. P. 1 Committee Notes on Rules—2002 Amendment), it cannot be seriously disputed that sending indictments across the street from one courthouse to another is not a part of any "current practice," even in 2002. The government cites only a

handful of examples of this happening in the 50 plus years since § 11-1903 (1970) was enacted and the 40 years since § 11-1916(a) was enacted. GB14. And the drafters of the Superior Court Rules of Criminal Procedure explicitly excised language about Superior Court grand juries returning indictments in federal court in the 2015-16 amendments enacted to "conform to the general restyling of the federal rules in 2002." Super. Ct. R. Crim. P. 6, Comment (2016); OB29. The government insists that these revisions are "unavailing" because the "D.C. Superior Court Rules Committee's interpretation of amendments to the Federal Rules of Criminal Procedure cannot 'overcome a federal statutory provision.'" GB36-37 (quoting A195). But the government cannot contest that the revisions to the Superior Court Rules at least speak to what "current practice" is in the District of Columbia.

Even if the Court agrees with the government that there is no requirement for federal felony convictions to begin with an indictment from a federal grand jury, Mr. Stewart still prevails because D.C. Code § 11-1916(a) does not empower a D.C. Superior Court grand jury to return an indictment in federal court.

## II. SECTION 11-1916 DOES NOT AUTHORIZE A SUPERIOR COURT GRAND JURY TO RETURN AN INDICTMENT IN FEDERAL COURT

Section 11-1916(a) of the D.C. Code empowers a grand jury convened by the Superior Court to "take cognizance of all matters brought before it regardless of whether an indictment is returnable in the Federal or District of Columbia courts." It is clear from the text, context, and legislative history of this provision that it was enacted to empower Superior Court grand juries to investigate both criminal and non-criminal malfeasance. OB31-46.

The government, however, would ignore all evidence indicating that § 11-1916(a) speaks to a grand jury's investigative function to find that it empowers a D.C. Superior Court grand jury to return an indictment on federal criminal charges to any U.S. District Court. The government is wrong.

### A. No Court has Interpreted § 11-1916(a)

There is no binding precedent on the issue of whether § 11-1916(a) permits a Superior Court grand jury to return an indictment on a federal crime in a federal district court. This is a question of first impression

before this Court and its decision in *United States v. Seals*, 130 F.3d 451 (D.C. Cir. 1997) does not control.

This Court's decision in *Seals* answered the question of whether empowering a Superior Court grand jury to return a federal indictment would be an unconstitutional vesting of the power of the judicial branch within the executive branch. *Id.* at 455-56. Before beginning its analysis, the *Seals* Court recited that § 11-1916(a) "provides that '[a] grand jury serving in the District of Columbia may take cognizance of all matters brought before it regardless of whether the indictment is returnable in the Federal or District of Columbia courts.'" *Id.* at 455 (quoting § 11-1916(a)). The district court here held that this recitation is "dicta," A188, because it is.

The government contends, GB15, that the *Seals* Court's recitation of the text of § 11-1916(a) is binding precedent on the statute's meaning because it was a "necessary antecedent" of the Court's ultimate holding that permitting a Superior Court judge to preside over a grand jury returning an indictment in federal court does not violate the separation of powers. GB15-16 (quoting *In re Grand Jury Investigation*, 916 F.3d

1047, 1053 (D.C. Cir. 2019)). At bottom, the government argues that when a court is called to rule on the constitutionality of a statute, it contemporaneously issues binding precedent on the meaning of the statute's text regardless of how little that court actually engages with that question. *See* GB16. The government is incorrect.

In *In re Grand Jury Investigation*, this Court held that it was bound by the Supreme Court's holding in *United States v. Nixon*, 483 U.S. 683 (1974), which addressed whether a dispute between President Nixon and the Special Prosecutor was an Article III justiciable controversy or merely an intra-branch dispute. In holding that a controversy existed, the Court relied, in part, on the Attorney General's promulgated regulations which authorized the Special Prosecutor to contest the exercise of executive privilege. *Nixon*, 418 U.S. at 695-97. This Court, in *In re Grand Jury Investigation*, held that the Supreme Court's reliance on the regulations at issue in *Nixon* amounted to binding precedent that the statute authorizing the Attorney General to issue those regulations appointing subordinate officers (like the Special Prosecutor) was constitutionally sound because any conclusion that the dispute between

the Special Prosecutor and President Nixon was a justiciable controversy necessarily required concluding that the Attorney General had the authority to appoint the Special Prosecutor in the first place. *In re Grand Jury Investigation*, 916 F.3d at 1053. In finding itself bound by that holding, however, this Court emphasized that Supreme Court statements ancillary to the actual holding, unlike passing statements by other courts, "generally must be treated as authoritative." *Id.* (quoting *United States v. Fields*, 699 F.3d 518, 522 (D.C. Cir. 2012)).

The Court's decision in *United States v. Hillie*, 39 F.4th 674 (D.C. Cir. 2022), is no different. The *Hillie* Court merely noted that when a court is called to address whether a statute is overbroad in terms of the First Amendment, that court must, necessarily, first construe the statute and those constructions are binding on lower courts. *Id.* at 683. True as that may be, it has no application to *Seals*, which was not an overbreadth decision and has no connection to the First Amendment.

This Court's recitation of the text of § 11-1916(a) in *Seals*, is nothing like the Supreme Court's construction of statutes that were integral to its holdings and must be treated as "authoritative," or decisions assessing

overbreadth in terms of the First Amendment. The *Seals* Court assumed the meaning of § 11-1916(a) as it was assumed by both parties before it. And "unexamined assumptions" do not bind any court. *Harper v. Va. Dep't of Tax'n*, 509 U.S. 86, 119 (1993) (O'Connor, J., dissenting); *Benitez v. Charlotte-Mecklenburg Hosp. Auth.*, 992 F.3d 229, 236 n.7 (4th Cir. 2021) ("[A]ssumptions are not holdings. Nor are they even dicta."). When it comes down to it, issues not "raised in briefs or argument nor discussed in the opinion of the Court," are not "binding precedent." *United States v. L.A. Tucker Trucking Lines, Inc.*, 344 U.S. 33, 38 (1952); *see also Webster v. Fall*, 266 U.S. 507, 511 (1925) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not considered as having been so decided as to constitute precedents."). The same can be said of the district court decisions in *United States v. Allen*, 729 F. Supp. 120 (D.D.C. 1989) (assessing whether a Superior Court grand jury is a "proceeding" under 18 U.S.C. § 1512(b)), and *United States v. Brown*, 2007 WL 2007513 (D.D.C. July 9, 2007) (assessing whether a Superior Court grand jury is a "federal grand jury" under 18 U.S.C. § 1515(a)(1)), both of which barely mentioned § 11-

1916(a). The government faults Mr. Stewart for not "identif[ying] a single court that has questioned" the recitation of § 11-1916(a) in *Seals*. GB16. But novelty does not make Mr. Stewart incorrect.

The government cites a single case, *Hackney v. United States*, 389 A.2d 1336 (D.C. 1978),[3] which has passed upon a relevant question, but Mr. Stewart has explained at length why *Hackney* does not control here. OB39-44. *Hackney*, decided in 1978, addressed an indictment returned in the Superior Court under then-D.C. Code § 11-1903 (1970) (not § 11-1916(a)) when there was only one single jury system for the District of Columbia that supplied jurors for both the district court and the Superior Court. Moreover, the government, in relying on *Hackney*, never contests that the defendant in *Hackney* never presented the D.C. Court of Appeals an alternative interpretation of the language at issue in § 11-1903 (1970).

The government's reliance on *Christian v. United States*, 394 A.2d 1 (D.C. 1978), fares no better because *Christian* actually supports Mr.

---

[3] The decision of the D.C. Court of Appeals in *Atkinson v. United States*, 295 A.2d 899 (D.C. 1972), like this Court's decision in *Seals*, speaks to the constitutionality of returning an indictment in another court. It is not a case of statutory interpretation and, therefore, has no application here.

Stewart's reading that § 11-1916(a) speaks to a grand jury's power to investigate rather than its power to indict. In *Christian*, seven men were convicted on various counts stemming from the infamous Hanafi murders in Northwest Washington, D.C. A subset of the defendants challenged on appeal the subpoena which was issued by the Superior Court grand jury to writ them from Pennsylvania for purposes of an identification lineup. The defendants argued that the Superior Court did not have nationwide subpoena power and, therefore, had no authority to haul them from Pennsylvania to Washington, D.C. *Id.* at 41-42. The D.C. Court of Appeals rejected this argument, holding that Superior Court grand juries "have powers comparable to federal grand juries." *Id.* at 42. To support this idea, the *Christian* court cited § 11-1903 (1970) (the previous version of § 11-1916(a)), "which provide[d]: 'A grand jury serving in the District of Columbia may take cognizance of all matters brought before it regardless of whether an indictment is returnable in the Federal or District of Columbia courts.'" *Id.* at 42-43. It went on, "Everything is identical between both (District and Superior Court) Grand Juries; purpose, standards, functions, powers, qualifications, and rules." *Id.* at

43 (quoting *Atkinson*, 295 A.2d at 901). And, before the 1986 separation of the D.C. jury systems, that was indeed true.

The *Christian* court, therefore, cited to § 11-1903 for the proposition that it empowered a Superior Court grand jury to issue nationwide subpoenas—an aspect of its *investigative* function—not for the proposition that a Superior Court grand jury could return an indictment in federal court. The *Christian* court, in a hypothetical, does acknowledge that § 11-1903 might empower a federal grand jury to return an indictment in the Superior Court, but at the same time, the court noted that "[u]se of such an artifice could not have been intended by Congress." *Id.*

### B. The Government's Interpretation of § 11-1916(a) is Wrong

Read properly, § 11-1916(a)'s permission for a Superior Court grand jury to "take cognizance of all matters brought before it regardless of whether an indictment is returnable in the Federal or District of Columbia courts," empowers the District of Columbia's local grand juries to investigate and report on criminal and non-criminal malfeasance. OB31-38. Without this provision, there would be no body authorized to

investigate the efficacy (or lack thereof) of D.C. governmental entities, regardless of whether those matters were intended to result in criminal charges in either of the District's criminal courts.

The government, however, argues that in interpreting § 11-1916(a), "the word 'cognizance' is most naturally afforded its primary meaning in legal contexts"—*i.e.*, "jurisdiction," and more specifically, the jurisdiction to indict on criminal charges. GB18. But replacing "cognizance" with "jurisdiction" does not change § 11-1916(a)'s plain meaning which empowers the grand jury to investigate. Even if § 11-1916(a) read that a Superior Court grand jury has "*jurisdiction* of all matters brought before it regardless of whether an indictment is returnable in the Federal or District of Columbia courts," the statute's most natural reading would still be that Congress is empowering the Superior Court grand jury to exercise its subpoena power to aid both its criminal and non-criminal investigations because the grand jury's "jurisdiction" still would not be contingent upon the ability to return an indictment to any court. The government offers no explanation for why using the word "jurisdiction"

would necessarily mean that § 11-1916(a) concerned voting on and returning indictments rather than investigating malfeasance.

Even if defining "cognizance" as "jurisdiction" tended to make § 11-1916(a) mean that a Superior Court grand jury could return an indictment on federal charges in federal court, the government has no response at all to Mr. Stewart's point that Congress used the word "jurisdiction" to describe the jurisdiction of every other judicial or quasi-judicial body in the D.C. Code. OB38. Why, then, would it choose to use a different word here? Indeed, the government has not pointed to a single example of Congress using the term "take cognizance of" as a grant of jurisdiction to a judicial or even quasi-judicial body.

The government asserts that there is "no support for" Mr. Stewart's argument that the language of § 11-1916(a) "differentiates between *taking cognizance* and *returning an indictment*." GB19 (quoting OB34 (italics in original)). But this ignores the language of the statute itself. "[R]egardless of whether an indictment is returnable in the federal or District of Columbia courts," is a descriptive, adjectival phrase. It aids the reader in answering the question of which matters exactly a D.C.

grand jury is permitted to "take cognizance of." If Congress had merely said that a D.C. grand jury "may take cognizance of all matters brought before it," a cautious ready would have wondered if the grand jury's authority extended to investigating matters without the intention of voting on or returning a criminal indictment. By including the descriptive adjectival phrase, Congress so clarified that "all matters" includes non-criminal matters for which no indictment could ever be returned in any criminal court. The phrase "regardless of whether an indictment is returnable" clarifies § 11-1916(a) is an expansive grant of investigative authority to "all matters"—criminal and non-criminal alike.

The government has no response to Mr. Stewart's argument that if Congress intended to empower the Superior Court grand jury to return federal indictments in federal court, Congress simply would have said so. OB37-38. Instead, the government restates, without any evidence, that the "most natural reading [is] that any D.C. grand jury can return an indictment" in either D.C. court. GB19. But if that is what Congress meant, that is what it would have said. *See Judge Rotenberg Educ. Ctr., Inc. v. USFDA*, 3 F.4th 390, 400 (D.C. Cir. 2021). Congress was (and is)

more than capable of enacting legislation saying that "Any grand jury constituted in the District of Columbia may return an indictment to either the District of Columbia Superior Court or the Federal District Court for the District of Columbia." But it has not done so, and the Court should not accept the government's invitation to read that language into a statute where it does not exist. To cite the government's own authority, "Courts do not 'usually read into statutes words that aren't there.'" GB32 (quoting *Romag Fasteners, Inc. v. Fossil, Inc.*, 590 U.S. 212, 215 (2020)).

The government insists that adopting Mr. Stewart's reading would somehow hinder a grand jury from returning an indictment and that "it would be surprising for Congress to permit a grand jury to investigate a matter but leave it powerless to return an indictment if it found evidence of criminal wrongdoing." GB19 n.6. But reading § 11-1916(a) as empowering the Superior Court grand jury to investigate both criminal and non-criminal matters would not leave the Superior Court grand jury powerless to indict. Mr. Stewart addressed this issue at length in his opening brief. OB44-46.

A grand jury's power to investigate is typically addressed in statute, like the U.S. Code or the D.C. Code. *See e.g.,* 18 U.S.C. § 3333. A grand jury's power to indict, on the other hand, is typically addressed in the relevant rules of criminal procedure. *See e.g.*, Fed. R. Crim. P. 6. When § 11-1916(a) was enacted (and even when § 11-1903 was enacted), the power of a Superior Court grand jury to indict was covered by Superior Court Rule of Criminal Procedure 6, and it has been covered by that Rule since 1971. *See* OB45. Mr. Stewart's reading of § 11-1916(a), therefore, best aligns with Congress's historic practice of codifying the two primary duties of a grand jury in two different locations.

Even the government acknowledges that "[g]rand juries are ordinarily understood to have the power to indict." GB19 n.6. That is exactly why Congress has never codified the authority of a grand jury (federal or otherwise) to return an indictment by statute. So why would it here? It makes more sense that in creating the Superior Court and its grand jury, Congress mimicked the legislation creating federal grand juries where the power to investigate is housed in the U.S. Code and the power to indict is housed in the Federal Rules of Criminal Procedure. *See*

OB45 (discussing 18 U.S.C. §§ 3331-3333). The government would have this Court believe that Mr. Stewart's interpretation would "sever[] [the] grand jury's investigative power from its authority to indict." GB19 n.6. But explaining that the two powers of the Superior Court grand jury exist in two different codes does not deny that either exists.

The government continues to ignore Mr. Stewart's opening brief by arguing that it is not "apparent why Congress would include such a generic grant of authority as part of its legislation creating a separate local court system for the District of Columbia." GB20. But, again, Mr. Stewart explained this at length. OB35-37. If Congress did not affirmatively authorize a Superior Court grand jury to investigate non-criminal matters, there would be no grand jury in the District of Columbia that could do so. Every American outside of D.C. enjoys the security blanket of grand juries which can investigate criminal (and non-criminal) corruption in local and state government. Why should Washingtonians be denied the same?

The government also misunderstands Mr. Stewart's citations to various states' statutes empowering grand juries to investigate non-

criminal conduct. GB20 (citing OB34-36). These statutes demonstrate that grand juries are traditionally tasked with investigating non-criminal conduct by statute. These statutes, therefore, show that Congress would feel a need to affirmatively codify such authority for the Superior Court's grand jury as well.

The government faults Mr. Stewart for Congress's choice to house the Superior Court grand jury's authority to investigate non-criminal conduct within the text § 11-1916(a) rather than specifically stating that the grand jury could investigate "noncriminal matters." GB21. By making this argument, the government wants the Court to ignore that Congress did not use the often-used term "jurisdiction" in § 11-1916(a) while faulting Congress for not using the specific term "non-criminal" in describing what conduct the grand jury is authorized to investigate. The government cannot have it both ways.

The government then seeks shelter in the wrong place—arguing that the 1986 amendments which created § 11-1916(a) de facto incorporated the D.C. Court of Appeals' decisions in *Atkinson* and *Hackney*, because § 11-1916 was "re-enacted … without change." GB22.

But this ignores that the 1986 amendments were a complete overhaul of D.C. juries and grand juries—bifurcating the existing jury system into two separate systems for the two court systems in D.C. The government's argument further ignores that, before 1986, it would have made perfect sense for an indictment from any grand jury to suffice in either court because, before 1986, *all* grand juries were summoned and controlled by federal law and, therefore, the district court. *See* § 11-1902 (1970). After 1986, Congress intentionally separated the two jury systems by creating a separate jury selection system and plan for the Superior Court. D.C. Code § 11-1901.

The government similarly fails to grapple with Mr. Stewart's argument that the addition of § 11-1917 in 1986, which permits the two jury systems to "shar[e] resources and facilities (including automated data processing and hardware and software, forms, postage, and other resources," actually supports an argument that the jury systems of the two courts were fully separated by the 1986 legislation. The government argues that § 11-1917 supports its reading of continued entanglement of the two jury systems—but the government has no response to Mr.

Stewart's point that § 11-1917 is the exception to the rule. Congress created § 11-1917 to enumerate the only way that the two jury systems should interact—administratively. If Congress wanted either grand jury sending indictments across the street to the opposite court, § 11-1917 is exactly where it would have said so. But it did not.

### C. The Government's Reading of § 11-1916(a) Would Permit Absurd Results

The government has offered nothing to rebut Mr. Stewart's point that the government's interpretation of § 11-1916(a) is nonsensical to the point of absurdity because it would permit the U.S. Attorney's Office in D.C. to bypass the federal grand jury entirely. Moreover, the language of the statute which the government claims authorizes returning an indictment in the "federal … courts" is not limited to the district court in the District of Columbia. The government's interpretation of § 11-1916(a), therefore, would permit the Superior Court grand jury to indict crimes in federal courts across the country.[4] Indeed, the government

[4] The government asserts that Mr. Stewart's contention that the government's interpretation of § 11-1916(a) would permit absurd results was not preserved below and is, therefore, subject to plain error review. GB24-25. But this point was made and considered by the district court.

does not contest that the government's interpretation of the statute would permit the U.S. Attorney's Office to circumvent the federal grand jury altogether. Instead, the government complains that neither Mr. "Stewart nor the district court have identified any evidence of such purported abuses occurring." GB25. But Mr. Stewart is under no obligation to offer evidence of the obvious.

"A statutory outcome is absurd if it defies rationality." *Landstar Exp. Am., Inc. v. Fed. Maritime Comm'n*, 569 F.3d 493, 498 (D.C. Cir. 2009) (citing *Corley v. United States*, 556 U.S. 303, 317 (2009)). Courts should eschew statutory interpretations "so contrary to perceived social values that Congress could not have intended it." *Id.* at 498-99 (quoting John F. Manning, *The Absurdity Doctrine*, 116 H. L. Rev. 2387, 2390 (2003)). "In deciding whether a result is absurd," courts should "consider not only whether that result is contrary to common sense, but also

---

*See* A194-95; A117-18; A162-64. "[T]he standard for preserving an error is not so strict." *See United States v. Koan*, 2026 WL 2969096, --- F.4th ---- (5th Cir. Oct. 2, 2026). Plain error has no application here where the absurdity of the government's interpretation is but one reason supporting Mr. Stewart's contrary interpretation that has been the basis of all of his briefing below and this entire appeal.

whether it is inconsistent with the clear intentions of the statute's drafters…." *Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1068 (D.C. Cir. 1998). There is no requirement that the absurdity actually take place—particularly where a defendant and the district court below are both warning about future abuses that will be permissible if a particular interpretation is adopted.

Here the district court has interpreted § 11-1916(a) as permitting the U.S. Attorney's Office to run its entire criminal docket—for both federal and Superior Court—out of the Superior Court grand jury. The government does not contest at all that it could abandon the federal grand jury on a whim under its reading of the statute. *See* GB24-25. And the government does not meaningfully contest that its reading would permit the Superior Court grand jury to return an indictment in "federal courts" in Texas and Hawaii as much as it could in the federal court in the District of Columbia *See id.* In response, the government cites only a single case where the Fifth Circuit Court of Appeals declined to hold that "the Constitution limits a grand jury to indicting only crimes occurring

in the district where it is convened." GB24 (quoting *United States v. Cessa*, 856 F.3d 370, 372 (5th Cir. 2017)). This is hardly persuasive.

Grasping for a limiting principle to its own proposed interpretation of § 11-1916(a), the government proposes in a footnote that § 11-1916(a)'s use of "the federal … courts," is limited to the federal district court in Washington, D.C. because an unrelated statute which governs D.C.'s Advisory Neighborhood Commissions forbids the commissions from bringing suit "in the courts of the District of Columbia or in the federal courts." GB25 n.8 (quoting D.C. Code § 1-309.10). The government believes that "federal courts" in § 1-309.10 refers only to the district court in D.C. because "[i]t is unlikely that this statute was concerned about the possibility of D.C. Advisory Neighborhood Commissions initiating legal proceedings in federal courts elsewhere in the country." *Id.* But why would the D.C. Council not be concerned about this? If air pollution was migrating from Virginia or Maryland to the District, an Advisory Neighborhood Commission might well wish to sue in the Eastern District of Virginia or the District of Maryland.

In a tacit recognition that the district court's interpretation of § 11-1916(a) would permit the government to take all of the district court's hypothesized actions, it finally argues that it is up to Congress to change the language of § 11-1916(a) if it does not like the results. GB25-26. But Congress never intended these results, and the Court has an obligation to interpret the statute "as to avoid th[is] absurdity." *Mova Pharm.*, 140 F.3d at 1068 (quoting *Holy Trinity Church v. United States*, 143 U.S. 457, 459-60 (1892)). Interpreting § 11-1916(a) to speak only to the Superior Court grand jury's investigative function would avoid this issue altogether.

## CONCLUSION

The Federal Rules of Criminal Procedure are clear: to be prosecuted for a felony in federal court, a grand jury convened by a federal judge must first return an indictment against you. Mr. Stewart should not be treated differently because he was indicted in the District of Columbia. The indictment returned against Mr. Stewart is unlawful. This Court should reverse the district court and remand with instructions to dismiss the indictment.

Respectfully submitted,
A. J. Kramer
Federal Public Defender

/s/
Matthew L. Farley
Assistant Federal Public Defender
625 Indiana Avenue, N.W.
Washington, D.C. 20004
(202) 208-7500
Matthew_Farley@fd.org

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing Appellant's Reply Brief was prepared in Century Schoolbook 14-point proportionally spaced font and contains 6,492 words in compliance with the type-volume limitations of Fed. R. App. P. 32(a)(7).

/s/
Matthew L. Farley
Assistant Federal Public Defender